[No. S057834. Aug. 2, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
WALTER JEFFERSON et al., Defendants and Appellants.

COUNSEL

Jennifer Mack, under appointment by the Supreme Court, for Defendant and Appellant Walter Jefferson.

John Steinberg, under appointment by the Supreme Court, for Defendant and Appellant Andre Brown.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Marc E. Turchin, Sanjay T. Kumar, William T. Harter, Jaime L. Fuster, Lance E. Winters, Carol Frederick Jorstad and James William Bilderback II, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KENNARD, J.**—The "Three Strikes and You're Out Law" (Pen. Code, § 667, subds. (b)-(i), hereafter the Three Strikes law),[1] requires that a defendant who is convicted of a felony and has a prior conviction for a "strike" (a violent or serious felony) be sentenced to double the prison term for the defendant's "current felony conviction." For instance, a defendant who has a prior strike and is convicted of a felony for which the prescribed sentence is nine years will have that sentence doubled to eighteen years. If the current felony is punished by an *indeterminate* term of imprisonment, the Three Strikes law requires a doubling of the "minimum term" the defendant must serve. (§ 667, subd. (e)(1), hereafter section 667(e)(1).) For example, a defendant who has a prior strike and who is convicted of a felony punishable

[1]Unless otherwise stated, all further statutory references are to the Penal Code.

by a term of 15 years to life in prison will receive a sentence of 30 years (2 times 15 years) to life.

In this case, defendants, each of whom had a prior strike, were convicted of attempted willful, deliberate, and premeditated murder (hereafter attempted premeditated murder). Under the applicable punishment provision (§ 664) attempted premeditated murder is punishable by life imprisonment with the possibility of parole, which both parties agree is an indeterminate prison term. But section 664 says nothing about service of a minimum term subject to doubling under section 667(e)(1). Thus we must determine whether other statutes establish a minimum term for defendants' life sentences.

We have found two such provisions: section 3046 and former subdivision (b)(2), now subdivision (b)(4), of section 186.22 (hereafter section 186.22(b)(4)). Under section 3046, a defendant sentenced to life in prison with the possibility of parole must, before becoming eligible for release on parole, serve "at least seven calendar years" or a term established pursuant to any "other section of law" that "establishes a minimum period of confinement" in prison. Here, the "other section of law" is section 186.22(b)(4). It provides that when a defendant commits a felony "for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members" (§ 186.22, subd. (b)(1)) and receives an indeterminate sentence, the defendant "shall not be paroled until a minimum of 15 calendar years have been served." (§ 186.22(b)(4).) By requiring a defendant to serve at least 15 years of imprisonment before parole, section 186.22(b)(4), read together with section 3046, establishes a minimum term of 15 years that is subject to doubling under section 667(e)(1) of the Three Strikes law.

I

Defendant Andre Brown was a member of the Southside Village Crips, a criminal street gang; defendant Walter Jefferson was an "associate" of that gang. On the night of September 11, 1994, both defendants and Damian Sharply, another gang member, approached three teenagers on a street corner in Pomona, California. Defendant Jefferson opened fire, injuring one of them, Jose Hernandez, in the hip. At trial, the prosecution presented evidence that the shooting was gang related.

The jury convicted each defendant of two counts of attempted premeditated murder. (§§ 664, subd. (a), 187, 189.) It also found true allegations that they committed the crimes on behalf of a criminal street gang (§ 186.22,

subd. (b)), that defendant Jefferson personally used a firearm in committing the crimes (§ 12022.5), and that defendant Jefferson personally inflicted great bodily injury on victim Hernandez (§ 12022.7). Each defendant also admitted a prior serious felony conviction (§ 667, subd. (a)(1)), which also constituted a prior conviction under the Three Strikes law (§ 667, subds. (b)-(i)).

The trial court sentenced defendant Jefferson to life imprisonment with the possibility of parole on the first count of attempted premeditated murder. The court doubled that sentence by adding a second term of life in prison because of Jefferson's prior strike, and it imposed a third life sentence for the second count of attempted premeditated murder. The court also sentenced Jefferson to three years in prison for the great bodily injury enhancement, five years for the firearm-use enhancement, and five years for the prior serious felony enhancement. In addition, the court ordered Jefferson to serve 15 years in prison before becoming eligible for parole, based on the jury's finding that the crimes fell within the criminal street gang sentencing provision. In all, the court sentenced Jefferson to 3 life terms plus 13 years, with a parole ineligibility period of 15 years.

The trial court sentenced defendant Brown to life imprisonment with the possibility of parole for the first count of attempted premeditated murder. Because of Brown's prior strike, the trial court doubled that sentence by adding a second term of life in prison, and it imposed a third life sentence for the second count of attempted premeditated murder. It also sentenced Brown to five years in prison for the prior serious felony enhancement. And because the jury found true the criminal street gang allegation, the court ordered Brown to serve 15 years before becoming eligible for parole. Brown's total sentence: three life terms plus five years, with a parole ineligibility period of fifteen years.

Both defendants appealed. The Court of Appeal affirmed the convictions, after striking from each judgment one life term and the fifteen-year parole ineligibility period imposed under the criminal street gang provision.

In striking the 15-year parole ineligibility period the trial court had imposed under the criminal street gang statute, the Court of Appeal reasoned: "Although [the] 15-year period of confinement [without parole] applies, . . . this is not a matter which the trial court imposes in sentencing the convicted felon. Instead, it is a matter addressed by the Board of Prison Terms in determining the prisoner's parole eligibility status."

The Court of Appeal also faulted the trial court for doubling defendants' life sentences under the Three Strikes law. The court observed that the

sentence of a defendant who has one prior strike must be doubled if a *determinate* sentence is imposed, and the minimum term of a defendant with one prior strike must be doubled if he or she has been given an *indeterminate* sentence. The court concluded that in this case sentence-doubling was improper because both defendants were sentenced to life with the possibility of parole, which the court viewed as an indeterminate sentence with no minimum term.

We granted the Attorney General's petition for review.

## II

In 1994, the Legislature enacted the Three Strikes law (§ 667, subds. (b)-(i)). Later that year, the voters passed an initiative virtually identical to the legislative version. (§ 1170.12.)

Under the Three Strikes law, if a defendant is convicted of a felony, and the trial court or jury finds one or more prior strikes (convictions for certain violent or serious felonies), sentencing proceeds under the Three Strikes law "[n]otwithstanding any other law." (§ 667, subd. (c).) The law contains two separate sentencing schemes: one for defendants with one prior strike, which we have here, and the other for defendants with two or more prior strikes. Relevant in this case is section 667(e)(1), which states: "If a defendant has one prior felony conviction that has been pled and proved, the determinate term or minimum term for an indeterminate term shall be twice the term otherwise provided as punishment for the current felony conviction."

## III

Under California law, most felonies carry a "determinate" prison sentence consisting of a specific number of months or years in prison. Some serious felonies, however, carry an "indeterminate" sentence, which means the defendant is sentenced to life imprisonment but the Board of Prison Terms can in its discretion release the defendant on parole.

Some indeterminate sentences expressly include a minimum prison term. For example, the punishment for second degree murder is ordinarily "a term of 15 years to life," while first degree murder generally carries "a term of 25 years to life." (§ 190, subd. (a).)[2] Other statutes specifying indeterminate sentences do not mention a minimum term, describing the sentence simply

[2] Other provisions specifying an indeterminate sentence that includes a minimum term are those for gross vehicular manslaughter with prior convictions for vehicular manslaughter or driving under the influence (§ 191.5, subd. (d) [15 years to life]), attempted murder of a

as "imprisonment in the state prison for life with the possibility of parole" or "imprisonment in the state prison for life." In this category are sentencing provisions for attempted premeditated murder (§§ 664, subd. (a), 187, 189)—the provision at issue here—as well as aggravated mayhem (§ 205), torture (§ 206.1), kidnap for ransom without bodily harm (§ 209, subd. (a)), kidnap for robbery or sexual assault (§ 209, subd. (b)), kidnap during carjacking (§ 209.5, subd. (a)), nonfatal train wrecking (§ 219), attempted murder of peace officer or firefighter (§§ 664, subd. (e), 187), exploding a destructive device with intent to kill (§ 12308), and exploding a destructive device that causes mayhem or great bodily injury (§ 12310, subd. (b)).

When a defendant is convicted of a felony and has a prior strike, section 667(e)(1) provides that "the determinate term or *minimum term for an indeterminate term* shall be twice the term otherwise provided as punishment for the current felony conviction." (Italics added.) Here, each defendant had a prior strike and in this case each was convicted of attempted premeditated murder, which is punishable by life imprisonment with the possibility of parole. The Court of Appeal characterized this sentence as an indeterminate term, but one without a minimum term. Accordingly, it concluded that the trial court erred in doubling each defendant's life term.

█ The Attorney General agrees with the Court of Appeal that a sentence of life in prison with the possibility of parole is an indeterminate term, because the trial court does not determine the length of the defendant's confinement in prison. He argues, however, that life imprisonment has a minimum term even when, as here, no such term is specified in the penalty provision for the specific crime in question. According to the Attorney General, the minimum term can be found in section 3046, which provides in relevant part: "No prisoner imprisoned under a life sentence may be paroled until he or she has served at least seven calendar years or has served a term as established pursuant to any other section of law that establishes a minimum period of confinement under a life sentence before eligibility for parole, whichever is greater." The Attorney General argues that section 3046 is a general or master provision that sets the minimum term for *all* indeterminate sentences of life imprisonment with the possibility of parole. For all such indeterminate sentences, the Attorney General insists, the minimum term under section 3046 is "seven calendar years or . . . a term as established pursuant to any other section of law that establishes a minimum period of confinement . . . , whichever is greater." An essential part of this argument is the Attorney General's assertion that in this context a parole-ineligibility period *is* a "minimum term for an indeterminate term" within the meaning of section 667(e)(1) of the Three Strikes law.

---

public official (§ 217.1, subd. (b) [15 years to life]), aggravated sexual assault on a child (§ 269 [15 years to life]), fatal assault on a child by means likely to produce great bodily harm (§ 273ab [25 years to life]), and aggravated arson (§ 451.5, subd. (b) [10 years to life]).

To determine the merits of the Attorney General's argument, we apply well-established rules of statutory construction. ▆ "The goal of statutory construction is to ascertain and effectuate the intent of the Legislature. (*Hsu* v. *Abbara* (1995) 9 Cal.4th 863, 871 [39 Cal.Rptr.2d 824, 891 P.2d 804].) Ordinarily, the words of the statute provide the most reliable indication of legislative intent. (*Ibid.*) When the statutory language is ambiguous, the court may examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes. (*Ibid.*; *Woods* v. *Young* (1991) 53 Cal.3d 315, 323 [279 Cal.Rptr. 613, 807 P.2d 455].)" (*Pacific Gas & Electric Co.* v. *County of Stanislaus* (1997) 16 Cal.4th 1143, 1152 [69 Cal.Rptr.2d 329, 947 P.2d 291].) " 'When the language is susceptible of more than one reasonable interpretation . . . , we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' " (*Granberry* v. *Islay Investments* (1995) 9 Cal.4th 738, 744 [38 Cal.Rptr.2d 650, 889 P.2d 970].)

▆ Here, we must interpret the phrase "minimum term for an indeterminate term," as it is used in section 667(e)(1). This phrase is not defined in the Three Strikes law or elsewhere in the Penal Code. To ascertain its meaning, we examine the manner in which the length of an inmate's term is calculated under both the Determinate Sentencing Act and the indeterminate sentencing scheme that preceded it.

Before July 1, 1977, California law provided for indeterminate sentencing. Under that sentencing scheme, penal statutes specified a minimum and a maximum sentence for felonies, often ranging broadly from as little as one year in prison to imprisonment for life. (See Cassou & Taugher, *Determinate Sentencing in California: The New Numbers Game* (1978) 9 Pacific L.J. 5, 8 (Cassou & Taugher).) A trial court would simply sentence a defendant to prison for "the term prescribed by law," while the actual length of a defendant's term, within the statutory maximum and minimum, was determined by the Adult Authority. (*Ibid.*; *In re Rodriguez* (1975) 14 Cal.3d 639, 645-646 [122 Cal.Rptr. 552, 537 P.2d 384]; former §§ 1168 [Stats. 1941, ch. 106, § 13, p. 1083], 3020 [Stats. 1941, ch. 106, § 15, p. 1110], 3023 [Stats. 1941, ch. 106, § 15, p. 1110].)

Under the pre-1977 sentencing law, the Adult Authority decided when to release prisoners on parole. (Former § 3040, as enacted by Stats. 1957, ch. 2256, § 57, p. 3934.) Parole consisted of "the release of a prisoner *prior to* expiration of his term of imprisonment conditioned upon his continuing good behavior during the remainder of the term." (*In re Peterson* (1939) 14

Cal.2d 82, 85 [92 P.2d 890], italics added.) Thus, prisoners released on parole remained in the constructive custody of the Adult Authority; while on parole, they continued to serve their terms of imprisonment. Inmates with a life sentence were eligible for parole only if they had served at least seven years in prison. (§ 3046.) No inmate could be released before serving the minimum term of imprisonment provided by law for the offense of which he or she was convicted. (§ 3049.) A prisoner who had served the maximum term of imprisonment was discharged from the custody of the Adult Authority; an inmate whose maximum term was life in prison could remain in custody for life, if not granted parole.

To summarize: "Under the indeterminate sentence law, a 'term' included the total time the state had jurisdiction over the prisoner. The parole date was the date of release from actual custody, but the balance of the 'term' was to be served on parole." (Cassou & Taugher, *supra*, 9 Pacific L.J. at p. 28.)

On July 1, 1977, the Legislature replaced California's indeterminate sentencing scheme with a new law, the Determinate Sentencing Act. Under the new law, most felonies specify three possible terms of imprisonment (the lower, middle, and upper terms); after weighing any aggravating and mitigating circumstances, the trial court selects one of these terms. (§ 1170, subd. (b).) Some particularly serious crimes, however, remain punishable by indeterminate sentences of life in prison with the possibility of parole. (See crimes listed *ante*, at pp. 92-93 & fn. 2.)

As under the old sentencing law, defendants who under current law are sentenced to life imprisonment with the possibility of parole must serve at least seven years in prison before being eligible for parole (§ 3046), and all parolees remain in the constructive custody of the Department of Corrections and may be incarcerated for violating the terms and conditions of parole. (§ 3056.) But there is a significant difference between the old and current sentencing schemes: "Under the new law, the prisoner must be released upon *expiration* of his 'term' less good-time credits, with parole acting simply as a variable period of supervision after the end of the term. Parole is no longer service of the term. . . . *'Term' now means the period of actual confinement prior to release on parole."* (Cassou & Taugher, *supra*, 9 Pacific L.J. at p. 28, some italics added, fn. omitted.)

Thus, under the present law the prison "term" is the actual time served in prison *before* release on parole, and the day of release on parole marks the *end* of the prison term. Unlike the pre-1977 sentencing law, the period of parole is *not* part of a defendant's prison term, and the length of time an

offender may remain on parole or may be incarcerated for a parole violation is measured by statutory provisions setting the maximum parole period for most offenses at three years and establishing the maximum period of confinement for a parole violation at one year. (§§ 3000, subd. (b), 3057.) This applies to *determinate* sentences as well as *indeterminate* sentences of life imprisonment with the possibility of parole for crimes committed after enactment of the current sentencing law, which as we noted earlier treats a prisoner who is serving a life sentence and is released on parole as having *completed* the prison term. (Cassou & Taugher, *supra*, 9 Pacific L.J. at p. 28; see § 3041, subd. (a) [parole release dates for indeterminate sentences under the Determinate Sentencing Act "shall be set in a manner that will provide uniform *terms* for offenses of similar gravity and magnitude in respect to their threat to the public . . . ." (Italics added.)].)

From the above review of the old and current sentencing laws we learn this: A statute requiring a prisoner to serve a specified term of incarceration before being released on parole is a provision requiring service of a "minimum term" within the sentence-doubling language of section 667(e)(1). As we have pointed out, under the current sentencing scheme the parole release date marks the end of the prison term. Because section 3046 requires that a defendant sentenced to life imprisonment with the possibility of parole serve "at least seven calendar years or . . . a term as established pursuant to any other section of law that establishes a [greater] minimum period of confinement" before becoming eligible for parole, it sets forth a "minimum term" within the meaning of section 667(e)(1), which provides that for a defendant with a prior strike the "minimum term for an indeterminate term shall be twice the term otherwise provided as punishment for the current felony provision."

Defendants insist that the sentence for attempted premeditated murder does not have a minimum term, because section 664, the relevant penalty provision, does not mention service of any minimum term, stating only that the punishment is "imprisonment in the state prison for life with the possibility of parole." But as we have explained, the minimum term for a defendant found guilty of attempted premeditated murder is found not in section 664 but in section 3046. The parole ineligibility period set by section 3046 *is* a minimum term within the sentence-doubling language of section 667(e)(1).

The dissent asserts that we reach this conclusion because we are "dissatisfied" with an "apparent decision" by the Legislature not to include the period described in section 3046 within the meaning of section 667(e)(1). (Dis. opn., *post,* at p. 103.) To the contrary, our holding is based on the

statute's "objective meaning" (see *Hodges* v. *Superior Court* (1999) 21 Cal.4th 109, 120 [86 Cal.Rptr.2d 884, 980 P.2d 433] (conc. opn. of Werdegar, J.)), applying established principles of statutory construction.

Any other construction of section 667(e)(1) would produce an anomalous result. Attempted murder *without* premeditation is punishable by a prison term of five, seven, or nine years. If a defendant convicted of this crime has a prior strike, section 667(e)(1) requires that the defendant's sentence be doubled, thus resulting in a total prison term of 10, 14, or 18 years. But if a defendant with a prior strike is convicted of attempted murder *with* premeditation, the defendant is subject to an indeterminate sentence of life imprisonment. (§ 664, subd. (a).) Section 3046 requires a defendant sentenced to life imprisonment to serve *at least seven years* in prison before becoming eligible for release on parole, unless another provision of law establishes a greater minimum period of confinement. If this minimum term is not doubled under section 667(e)(1), a defendant convicted of attempted *premeditated* murder could be released in as little as 7 years, a term shorter than the minimum possible sentence of 10, 14, or 18 years for attempted *unpremeditated* murder with a prior strike. It is unlikely that the Legislature, when it enacted the Three Strikes law, or the voters, when they passed the Three Strikes initiative, intended such an anomalous result.

Defendant Jefferson also argues that the Legislature's reference to section 3046 in subdivision (e)(2)(A) of section 667 (section 667(e)(2)(A)), another part of the Three Strikes law, demonstrates that the Legislature did not intend that a parole ineligibility period fixed by section 3046 would be a "minimum term" within section 667(e)(1)'s sentence-doubling language. For the following reasons, we disagree.

As previously explained, section 667(e)(1) sets the penalty for a felony committed by a defendant with *one* prior strike. Section 667(e)(2)(A), which immediately follows section 667(e)(1), sets the penalty for a felony committed by a defendant with *two or more* prior strikes. It provides that the sentence for such defendants is "an indeterminate term of life imprisonment with a minimum term of the indeterminate sentence calculated as the greater of: [¶] (i) Three times the term otherwise provided as punishment for each current felony conviction . . . [;] [¶] (ii) Imprisonment in the state prison for 25 years[; or] [¶] (iii) The term determined by the court pursuant to Section 1170 for the underlying conviction, including any enhancement[s] . . . *or any period prescribed by Section 190 or 3046.*" (§ 667(e)(2)(A), italics added.)

Defendant Jefferson points out that section 667(e)(2)(A) describes the parole ineligibility period fixed by section 3046 not as a "minimum term,"

but as a "period." He argues: "[T]he deliberate use of the particular 'period' prescribed by section 3046 [in section 667(e)(2)(A)] differentiates it from a 'minimum term.' Were it not different, it could not be used to *define* the minimum term to be imposed under this subdivision." Because, he asserts, in section 667(e)(2)(A) the Legislature described the parole ineligibility period in section 3046 as a "period" and not a "minimum term," it could not have intended that period to be a "minimum term" under 667(e)(1).

Defendant Jefferson fails to consider that section 667(e)(2)(A) makes reference not merely to the "period" prescribed by *section 3046* but rather to the "period prescribed by *Section 190* or 3046." (Italics added.) Section 190 provides that the sentence for first degree murder shall be 25 years to life in prison (§ 190, subd. (a)), and it states that these sentences include a "minimum term" (§ 190, subd. (e)). Thus, in section 667(e)(2)(A), the Legislature treats the parole ineligibility period in section 3046 as the *equivalent* of the minimum terms in section 190, and describes each of them as a "period." As a result, far from showing that the parole ineligibility period in section 3046 *is not* a minimum term, the Legislature's reference to section 3046 in section 667(e)(2)(A) provides persuasive evidence that the Legislature considered the parole ineligibility period in section 3046 to be a minimum term.

Like defendant Jefferson, the dissent relies heavily on section 667(e)(2)(A), although its analysis is somewhat different. The dissent asserts that section 667(e)(2)(A) shows that the drafters of the Three Strikes law "knew how to refer to section 3046 when that is what they wished to do. They did not refer to the section in calculating the sentence of a second strike defendant (see § 667, subd. (e)(1)), and we are not free to add what they omitted." (Dis. opn., *post,* at p. 105.) We do not agree that the drafters' *explicit reference to section 3046 in section 667(e)(2)(A), combined with their failure to refer to it by name in section 667(e)(1),* shows that they intended to omit from section 667(e)(1) the minimum period described in section 3046. The issue in this case is whether the Legislature intended the phrase "minimum term for an indeterminate term" in section 667(e)(1) as a convenient way to describe not only indeterminate sentences that expressly include a minimum term, such as the 25-year-to-life sentence for first degree murder, but also sentences for which section 3046 establishes the minimum period of imprisonment. The Legislature's mere mention of section 3046 by name in section 667(e)(2)(A) sheds little light on this question.

The dissent also argues: "If the drafters had understood section 3046 as defining a 'term,' they would not have mentioned the section [in subdivision (e)(2)(A)(iii) of section 667] at all, because they would have assumed that courts would automatically refer to the section in calculating a third strike

offender's sentence under section 667, subdivision (e)(2)(A)(i) (prescribing a minimum term of '[t]hree times the *term* otherwise provided as punishment for each current felony conviction'). (Italics added.)" (Dis. opn., *post,* at p. 105.) In our view, this reference to section 3046 merely demonstrates the Legislature's intent to clarify the scope of section 667 (e)(2)(A)(iii), and not, as the dissent would have it, a legislative belief that section 3046 does not define a "term."

The dissent further contends: "[W]hen the drafters did make use of section 3046 [in section 667(e)(2)(A)], they did not require the court to *multiply* the seven-year period of parole ineligibility set out therein. For the rare third strike case not covered by another provision of the Three Strikes law, the drafters apparently were satisfied to rely on the Board of Prison Terms to decide when, if ever, after the period set out in section 3046, such an offender would be released on parole." (Dis. opn., *post*, at p. 105.) The dissent asks, "How can we justify doubling the period set out in section 3046 for a second strike defendant when the drafters left the same period unmultiplied for a third strike defendant?" (*Ibid.*) We see no inconsistency between the Legislature's decision to double the parole ineligibility period set by section 3046 for second strike offenders and its decision not to multiply that period for third strike offenders. As to third strike offenders, section 3046 comes into play only in a very limited number of cases: those in which the minimum term of confinement is (1) more than three times the term provided as punishment for the current conviction *and* is (2) more than twenty-five years. The Legislature may have seen no need to multiply these extremely long sentences, notwithstanding its conclusion that the shorter parole ineligibility period in section 3046 should be multiplied for second strike offenders.

In this case, the trial court tried to comply with the sentence-doubling requirement of section 667(e)(1) by sentencing defendants to two life sentences instead of one. This was wrong, as the Court of Appeal concluded. But the Court of Appeal in turn was wrong in holding that there was no minimum term to double. As explained above, section 3046 establishes a minimum term.

Section 3046 specifies the minimum term for an indeterminate sentence as "seven calendar years *or* . . . a term as established pursuant to any other section of law that establishes a minimum period of confinement under a life sentence before eligibility for parole, whichever is greater." (Italics added.) In this case, the "other section of law" that establishes a "minimum period of confinement" for each defendant's life sentence is section 186.22(b)(4), which pertains to criminal street gangs, and establishes a minimum confinement period of 15 years. Defendants argue that even if, as we have just

concluded, section 3046 establishes a minimum term, section 186.22(b)(4)'s 15-year minimum confinement period is not subject to doubling under section 667(e)(1) of the Three Strikes law. We now turn to this contention.

## IV

Here, the jury found true allegations that defendants' crimes fell within the criminal street gang language of subdivision (b) of section 186.22 and thus were subject to greater punishment. That provision imposes an increased penalty for "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." (§ 186.22, subd. (b)(1).) For most felony convictions, subdivision (b)(1) of section 186.22 requires an additional prison term of either one, two, or three years. But section 186.22(b)(4) provides that any person who, like each defendant here, "violates this subdivision in the commission of a felony punishable by imprisonment in the state prison for life, shall not be paroled until a minimum of 15 calendar years have been served." At the time of the offenses committed here, the 15-year minimum appeared in subdivision (b)(2) of section 186.22; but in 1995 it was renumbered as subdivision (b)(4). (Stats. 1995, ch. 377, § 2.)

Based on the jury's finding in this case that the crimes fell within the criminal street gang sentencing provision, the trial court ordered defendants to serve 15 years in prison before becoming eligible for parole. The court did not, however, invoke section 667(e)(1) of the Three Strikes law to double the 15-year minimum. The Attorney General contends that, in compliance with section 667(e)(1), the trial court should have ordered each defendant to serve 30 years before becoming eligible for parole.

Defendants disagree. They contend that even if, as a general rule, a law prescribing a minimum period of confinement before release on parole establishes a minimum term under section 667(e)(1), that section is nonetheless inapplicable to the minimum term established by section 186.22(b)(4). Noting that section 667(e)(1) requires the sentencing court to double only the minimum term of the "current felony conviction," defendants argue that section 186.22(b)(4), which provides for a 15-year minimum term of imprisonment when a defendant commits a felony punishable by an indeterminate sentence on behalf of a criminal street gang, is an enhancement provision, not part of the "current felony conviction." Thus, defendants claim, section 186.22(b)(4)'s 15-year minimum term is not subject to doubling under section 667(e)(1) of the Three Strikes law.

Decisions of the Courts of Appeal that have addressed the issue have held, albeit without extended analysis, that section 667(e)(1)'s sentence-doubling language does not apply to sentence enhancements. (*People* v. *Dominguez* (1995) 38 Cal.App.4th 410, 424 [45 Cal.Rptr.2d 153]; *People* v. *Martin* (1995) 32 Cal.App.4th 656, 666 [38 Cal.Rptr.2d 776]; see also *People* v. *McKee* (1995) 36 Cal.App.4th 540, 546-548 [42 Cal.Rptr.2d 707].) As we shall explain, however, the 15-year minimum term prescribed by section 186.22(b)(4) is not a sentence enhancement.

A sentence enhancement is "an *additional term* of imprisonment added to the base term." (Cal. Rules of Court, rule 405(c), italics added.) An example would be subdivision (a) of section 12022.7, which provides that any person who personally inflicts great bodily injury in the commission of a felony shall "be punished by an *additional term* of three years . . . ." (Italics added.) As this court has explained, enhancements " 'focus on an element of the commission of the crime or the criminal history of the defendant which is not present for all such crimes and perpetrators and which justifies a higher penalty than that prescribed for the offenses themselves.' " (*People* v. *Rayford* (1994) 9 Cal.4th 1, 9 [36 Cal.Rptr.2d 317, 884 P.2d 1369], quoting *People* v. *Hernandez* (1988) 46 Cal.3d 194, 207-208 [249 Cal.Rptr. 850, 757 P.2d 1013].) Although section 186.22(b)(4) focuses on "an element of the commission of the crime" (the intent to assist a criminal street gang) that justifies particularly severe punishment, its 15-year *minimum* term for crimes punishable, as here, by an indeterminate sentence does not fall within rule 405(c)'s definition of an enhancement, because it is not an "additional term of imprisonment" and it is not added to a "base term."

Section 667(e)(1) of the Three Strikes law requires the "minimum term for an indeterminate term" to be "twice the term otherwise provided as punishment for the *current felony conviction*." (Italics added.) Unlike an enhancement, which provides for an *additional term* of imprisonment, the 15-year minimum term in section 186.22(b)(4) sets forth an *alternate* penalty for the underlying felony itself, when the jury has determined that the defendant has satisfied the conditions specified in the statute. Thus, section 186.22(b)(4) establishes the punishment for the "current felony conviction" within the meaning of section 667(e)(1), and it is subject to sentence-doubling under section 667(e)(1). Therefore, the trial court here erred in not doubling each defendant's 15-year minimum term.[3]

---

[3]The Court of Appeal in this case also held that the trial court's oral pronouncement of sentence should not have included the minimum term established by sections 186.22 and 3046, because the question of when defendants should be released on parole is "a matter

## CONCLUSION

For the reasons explained above, the trial court erred when it attempted to comply with the sentence-doubling requirement of section 667(e)(1) by sentencing defendants to two life terms instead of one. Instead, it should have doubled the minimum term established by section 3046, which in this case is the 15-year minimum set by the criminal street gang provision of section 186.22(b)(4).[4]

We reverse the judgment of the Court of Appeal insofar as it ordered the trial court to strike from each defendant's judgment of conviction the 15-year minimum term imposed under the criminal street gang provision of section 186.22(b)(4). The Court of Appeal is directed to remand the matter to the superior court with directions to resentence defendants in accordance with the views expressed herein.

George, C. J., Baxter J., Chin, J., and Brown, J., concurred.

**WERDEGAR, J.,** Dissenting.—In this case the "Three Strikes" law does not appear to increase the amount of time that defendant, a second strike offender with a life sentence, must serve before becoming eligible for parole. This result seems counterintuitive, since a stated purpose of the Three

---

addressed by the Board of Prison Terms in determining the prisoner's parole eligibility." The Court of Appeal therefore modified the judgments by striking each defendant's 15-year minimum term. The Attorney General contends that the Court of Appeal was wrong and that it is not improper for the trial court to include, as part of a defendant's sentence, the minimum term of confinement the defendant must serve before becoming eligible for parole. Defendants here do not dispute this contention, and we agree with the Attorney General. By including the minimum term of imprisonment in its sentence, a trial court gives guidance to the Board of Prison Terms regarding the appropriate minimum term to apply, and it informs victims attending the sentencing hearing of the minimum period the defendant will have to serve before becoming eligible for parole. Thus, when the trial court here pronounced defendants' sentences, it properly included their minimum terms, although for the reasons explained in part IV, *ante*, it erred when it did not double those terms under section 667(e)(1).

[4]The Attorney General points out that each defendant was convicted of *two* counts of attempted premeditated murder, and that the jury found that *each* count fell within the criminal street gang provision. He therefore argues that the trial court should have sentenced each defendant "to two indeterminate life terms (§§ 664/187, 3046), each with a 15-year minimum (§ 186.22, former subds. (b)(1), (b)(2), 3046), doubled (§ 667, subd. (e)(1)), for a total of *60 years to life* . . ." (italics added) in addition to their determinate sentences (13 years for defendant Jefferson, 5 years for defendant Brown). Defendant Jefferson argues that such a sentence is impermissible, arguing that section 654 bars multiple enhancements under section 186.22(b)(4). We need not address this issue, because the offenses occurred on the same occasion, and the trial court on remand may elect to impose concurrent sentences. (See § 667, subd. (c)(6), (7); *People v. Deloza* (1998) 18 Cal.4th 585 [76 Cal.Rptr.2d 255, 957 P.2d 945]). If it does, the question whether it may impose consecutive 30-year minimum terms will not arise.

Strikes law is "to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses." (Pen. Code, § 667, subd. (b); except as noted, all further statutory citations are to this code.) A careful examination of the Three Strikes law, however, shows the appearance to be accurate: although the law generally requires the doubling of a second strike offender's "minimum term" (§ 667, subd. (e)(1)), in some cases there simply is no minimum term to double. In such cases, the Three Strikes law leaves unchanged the discretion of the Board of Prison Terms to determine when, if ever, after any statutory period of parole ineligibility, defendant and other similarly situated life prisoners may be released.

The majority seems dissatisfied with the Legislature's and the electorate's apparent decision to allow the Board of Prison Terms to retain this measure of discretion. Casting about for a source of judicial sentencing power, the majority fixes upon section 3046, a statute directing the Board of Prison Terms not to grant parole to life prisoners until they have served "at least seven calendar years." The majority would require trial courts to treat section 3046 as articulating a "minimum term" to be doubled and imposed as a sentence. This conclusion, however, cannot fairly be drawn from section 3046 or reconciled with the language of the Three Strikes law. Considered as an attempt to ensure longer sentences, the majority's holding is unnecessary because the Board of Prison Terms in any event can require a life prisoner to serve far more than seven, or even fourteen, years before being released on parole. The majority's holding also invades the powers of the board and the Governor, who share, to the exclusion of the courts, the discretion to determine when, if ever, parole shall be granted. (§§ 3040, 3041.2; see also Cal. Const., art. V, § 8, subd. (b).)

While the popular understanding of the Three Strikes law is that a second strike results in a doubled sentence and a third strike in life imprisonment, the actual words of the law are far more complex. As judges, we must look for the law's meaning in its words. The author of the majority opinion, on an earlier occasion, persuasively explained why this is so: "[I]n construing the Three Strikes law, it is not enough to say that because the Legislature and the electorate wished to impose tougher penalties on repeat violent offenders, we should therefore give that enactment the harshest possible construction. Judges are constrained by the law. For the sake of the predictability and stability of the law, our guideposts in interpreting the Three Strikes law must be the usual principles of statutory construction that apply in every case, not our projections of the hopes and fears that led to the statute's enactment. . . . 'For judicial construction to stick close to what the legislation says and not draw prodigally upon unformulated purposes or directions

makes for careful draftsmanship and for legislative responsibility. . . . Judicial expansion of meaning beyond the limits indicated is reprehensible because it encourages slipshodness in draftsmanship and irresponsibility in legislation. It also enlists too heavily the private . . . views of judges.' " (*People* v. *Davis* (1997) 15 Cal.4th 1096, 1115 [64 Cal.Rptr.2d 879, 938 P.2d 938] (dis. opn. of Kennard, J.), quoting Frankfurter, *Foreword*, Symposium on Statutory Construction (1950) 3 Vand. L.Rev. 365, 367-368.) Today, in my view, the majority disregards this wisdom.

Speaking technically, in the language of sentencing, the precise question before the court is how to sentence a second strike offender whose current offense is punishable by the indeterminate term of life imprisonment without a stated minimum term. The Three Strikes law directs courts to sentence second strike offenders by doubling "the determinate term or minimum term for an indeterminate term." (§ 667, subd. (e)(1).) This language, applied to the case before us, permits no doubling, because the statute prescribing the punishment for attempted premeditated murder (§ 664, subd. (a)) sets out neither a determinate term nor a minimum term for the indeterminate life sentence.

The majority, as mentioned, purports to find a minimum term in section 3046, which makes life prisoners ineligible for parole for "at least seven calendar years." The majority has misread section 3046. The section merely places a limit on the discretion of the Board of Prison Terms; it is not addressed to courts and does not purport to play any role in judicial sentencing. In pronouncing sentence for attempted premeditated murder, the court simply sentences to life in prison. The court does not impose, or even mention, the period set out in section 3046. Indeed, section 1168, subdivision (b), which does speak to courts at the time of sentencing, expressly directs the court *not* to set a minimum term when the indicated punishment is a straight life sentence. Thus, from the court's perspective at the time of sentencing, the crime at issue here simply does not carry a minimum term.

To double the seven-year period mentioned in section 3046, as the majority would, also appears contrary to the intent of the drafters of the Three Strikes law. While the drafters did make use of section 3046 in computing the sentence for a third strike defendant, the manner in which they did so strongly indicates they could not have intended the result the majority reaches. Under the Three Strikes law, the sentence prescribed for a third strike defendant's current offense is "an indeterminate term of life imprisonment with a minimum term of the indeterminate sentence calculated as the greater of: [¶] (i) Three times the term otherwise provided as punishment for each current felony conviction . . . [;] [¶] (ii) Imprisonment in the state

prison for 25 years[; or] [¶] (iii) The term determined by the court pursuant to Section 1170 for the underlying conviction, . . . *or any period prescribed by Section 190 or 3046.*" (§ 667, subd. (e)(2)(A), italics added.)

Three things can be said with certainty about how the drafters used section 3046 in calculating the sentence of a third strike defendant:

First, the drafters clearly knew how to refer to section 3046 when that is what they wished to do. They did not refer to the section in calculating the sentence of a second strike defendant (see § 667, subd. (e)(1)), and we are not free to add what they omitted. (E.g., *In re Hoddinott* (1996) 12 Cal.4th 992, 1002 [50 Cal.Rptr.2d 706, 911 P.2d 1381]; see generally, Code Civ. Proc., § 1858.)

Second, that the drafters made use of section 3046 in defining the punishment for a third strike offender does not mean that section 3046 prescribes a "minimum term for an indeterminate term" (§ 667, subd. (e)(1)) within the meaning of the provision defining the punishment for a second strike offender (*ibid.*). If the drafters had understood section 3046 as defining a "term," they would not have mentioned the section at all, because they would have assumed that courts would automatically refer to the section in calculating a third strike offender's sentence under section 667, subdivision (e)(2)(A)(i) (prescribing a minimum term of "[t]hree times the *term* otherwise provided as punishment for each current felony conviction"). (Italics added.)

Third, even when the drafters did make use of section 3046, they did not require the court to *multiply* the seven-year period of parole ineligibility set out therein. For the rare third strike case not covered by another provision of the Three Strikes law, the drafters apparently were satisfied to rely on the Board of Prison Terms to decide when, if ever, after the period set out in section 3046, such an offender would be released on parole. How can we justify doubling the period set out in section 3046 for a second strike defendant when the drafters left the same period unmultiplied for a third strike defendant? To be sure, section 3046 itself multiplies the seven-year parole ineligibility period when a defendant is sentenced to multiple consecutive life sentences. (§ 3046 [second sentence].) But the drafters of the Three Strikes law simply accepted "any period prescribed by Section . . . 3046" (§ 667, subd. (e)(2)(A)(iii)) without further multiplication.

The majority would justify its conclusion as a way to avoid the "anomalous result" (maj. opn., *ante*, at p. 97 et seq.) of punishing attempted

*premeditated* murder less harshly than attempted *unpremeditated* murder. The anomaly, however, predates the Three Strikes law. The lower, middle and upper terms for attempted unpremeditated murder are five, seven and nine years, respectively. (§ 664, subd. (a).) A person convicted of attempted premeditated murder must serve at least seven calendar years before becoming eligible for parole. (§ 3046.) Thus, only those attempted unpremeditated murderers sentenced to the lower term of five years will become eligible for parole earlier than an attempted premeditated murderer. The anomaly also survives the majority's interpretation of the Three Strikes law. If all terms and periods are doubled for second strike offenders, only those attempted unpremeditated murderers sentenced to the doubled lower term of 10 years will become eligible for parole earlier than an attempted premeditated murderer (who, under the majority's holding, would receive a 14-year minimum term). Other attempted unpremeditated murderers will not become eligible for 14 or 18 years—as late or later than attempted premeditated murderers. Thus, the majority's holding does not avoid anomalies and cannot rationally be justified as an effort to do so.[1]

At oral argument, the People expressly conceded that the seven-year period of parole ineligibility set out in section 3046 "is not part of the sentence which the court must necessarily articulate . . . ." The People went on to argue that "there is nothing preventing the court from articulating it." But the latter argument appears to have been based on the notion that the court, by referring to section 3046, would simply be providing information to the public and to "the victims and the families of the victims" about defendant's prospects for release on parole. Indeed, the People specifically endorsed the conclusion that the court might properly enter a straight life sentence, without articulating a minimum term, leaving the determination of any parole release date to the Board of Prison Terms: "[I]n this particular case, for example, the court could have simply said that the defendants have been found guilty of attempted premeditated murder, the appropriate term for that is life with the possibility of parole, further, the criminal street gang act enhancement was found to be true, and said nothing more on the matter."

---

[1]The majority would also find a minimum term for defendant's current offense in section 186.22, subdivision (b)(4), which affects the parole eligibility of a defendant convicted of committing a felony in association with a criminal street gang. The subdivision provides that "[a]ny person who violates this subdivision in the commission of a felony punishable by imprisonment in the state prison for life, shall not be paroled until a minimum of 15 calendar years have been served." (*Ibid.*) The subdivision does not set out a term to be imposed by a court; other subdivisions of section 186.22 do. Subdivision (a), which defines a crime, provides for a term of sixteen months, or two or three years, and subdivision (b)(1) provides for an enhancement of one, two or three years. Subdivision (b)(4), on which the majority relies, like section 3046, is directed to the Board of Prison Terms and simply overrides the Legislature's usual instruction to the board not to consider parole for at least seven years (§ 3046).

If it is true, as the People conceded, that the application of sections 3046 and 186.22, subdivision (b)(4) (see fn. 1, *ante*) falls within the jurisdiction of the Board of Prison Terms, then a sentencing court has no business doubling and imposing as a sentence the periods of parole ineligibility set out in those statutes. To do so is to purport, without authority, to bar the board from granting parole for 14 years (section 3046, doubled), or 30 years (section 186.22, subdivision (b)(4), doubled), when those sections by their terms expressly confer upon the board the power to grant parole after 7 or 15 years. This violates the constitutional separation of powers. (Cal. Const., art. III, § 3.) The power to grant parole, and to determine whether and when it shall be granted, belongs to the Board of Prison Terms and to the Governor, to the exclusion of the judiciary. (Cal. Const., art. V, § 8, subd. (b); §§ 3040, 3041.2.) " '[O]nce [a] conviction has been obtained and sentence imposed, it is the duty of other departments of government to enforce the sentence and to determine when and under what circumstances the prisoner will be eligible for release. Therefore, when the judiciary attempts to anticipate the rules of the legislative and executive departments relating to the parole of prisoners and attempts, in effect, to circumvent those rules it infringes upon the prerogatives of other departments of government.' " (*People* v. *Morse* (1964) 60 Cal.2d 631, 646 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810], quoting *Broyles* v. *Commonwealth* (Ky. 1954) 267 S.W.2d 73, 76 [47 A.L.R.2d 1252].)

The People also contended at oral argument that, if the court did sentence defendant to life imprisonment without stating a minimum term, then "the Board of Prison Terms would be forced by operation of law" to double the applicable statutory periods of parole ineligibility. We have no occasion to consider this argument because our only role in this case is to review the judgment, including the sentence. For the reasons already discussed, however, the argument that the Three Strikes law directly compels the board to double any applicable periods of parole ineligibility, even if true, would not support the conclusion that the trial court may enter an order purporting to tell the board what to do.

In conclusion, I fear the majority has gone astray searching for a minimum term to double, when defendant's current offense simply does not carry a minimum term. (§ 664, subd. (a).) Nor can we properly double the indeterminate straight life sentence, as the majority acknowledges (maj. opn, *ante*, at p. 102), because the Three Strikes law authorizes us to double only a "determinate term or minimum term for an indeterminate term" (§ 667, subd. (e)(1)). Under these circumstances, the most correct application of the Three Strikes law in this case appears to be simply to commit defendant to prison for life, subject to release if and when the Board of Prison Terms and/or

the Governor see fit to grant parole after any statutory period of parole ineligibility.

I would affirm the judgment of the Court of Appeal.

Mosk, J., concurred.