[No. H025035. Sixth Dist. Dec. 17, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT GONZALES, Defendant and Appellant.

COUNSEL

Erik G. Babcock, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan and Rene A. Chacon, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BAMATTRE-MANOUKIAN, Acting P. J.**—Defendant Robert Gonzales appeals after conviction, by jury trial, of two counts of second degree robbery (Pen. Code, §§ 211, 212.5)[1] and two counts of impersonating a public officer (§ 146a, subd. (b)). The jury found true allegations that defendant had served three prior prison terms (§ 667.5, subd. (b)). Defendant was sentenced to an aggregate prison term of seven years.

On appeal, defendant contends there was insufficient evidence to support his two convictions of impersonating a public officer and one of his robbery convictions. Defendant also contends the trial court gave erroneous instructions as to the offense of impersonating a public officer.

We will affirm the judgment.

## I. BACKGROUND

### A. *Counts 1 and 3*

Shortly after midnight on February 16, 1997, Melvin Oldeen and his wife were driving home from seeing a movie. He noticed a pickup truck on the side of the road. The truck had hit a light pole and the driver was attempting to dislodge it. Oldeen parked his car and approached the pickup truck, intending to render assistance. He recommended that the driver get out of the vehicle. Meanwhile, Oldeen's wife went to a nearby house to call 911.

A few minutes later, a light blue van drove upon the scene. Two men got out of the van: defendant (the driver) and a second person (the passenger). Both men approached, and one of them said, "May we see some ID, sir." Oldeen initially testified that defendant spoke these words, but he later changed his mind and stated, "It was the passenger." Oldeen "was astounded" at how politely the man asked for identification, and he "assumed" the two men were off-duty police officers. The man asked for identification three times before the pickup truck driver complied. While waiting for compliance

---

[1] Unspecified section references are to the Penal Code.

with the request, defendant spoke to his passenger, saying "something to the effect" of "Get ready, man."

When the pickup truck driver took out his wallet to get his identification, the passenger grabbed the wallet. The passenger struck the pickup driver, sending him to the ground. The passenger also struck Oldeen.

At some point, police arrived. Oldeen described the perpetrators. A few days later, Oldeen viewed a photographic lineup. He selected defendant's photograph. Oldeen also identified defendant at trial.

### B. Counts 2 and 4

About 10:00 p.m. on February 24, 1997, Sandeep Kalkat was attempting to tow his car, which had broken down. His friend Gagan Singh was helping him. They were performing the towing operation at night because they believed it was not legal.

A black Nissan sports car approached and two men got out: defendant and a second person. The men claimed to be "undercover cop[s]" and told Kalkat that what he was doing was illegal. Kalkat was "scared" at the time. He believed the men were police officers.

Defendant patsearched Kalkat and told him, "Let me see your ID." Defendant also asked for Kalkat's wallet. Kalkat complied. Defendant looked through the wallet and then gave it back. When defendant asked for the wallet, Kalkat began to suspect that defendant was not a police officer. Kalkat thought about asking defendant for a badge, but opted not to because he was "scared" that defendant could physically harm him; he also feared defendant could have a gun. After defendant and the other man left, Kalkat checked his wallet and discovered two credit cards were missing.

Meanwhile, the second man spoke with Singh, asking to see his identification and wallet. Singh gave the man his wallet. Singh suspected that the two men were not police officers, but he was afraid of them "because of their size" and because he feared they might be armed. The man took Singh's wallet back to the sports car, but later returned it.

Kalkat and Singh described the men to the police. Singh told the police the license plate number of the black Nissan. The registered owner was Alfredo Gonzales—defendant's father, who allowed defendant to drive his car. On the night of the incident, the police located the black Nissan at the residence of Alicia Gonzales—defendant's sister, who allowed defendant to stay with her sometimes.

The police subsequently showed Kalkat a photographic lineup. Kalkat selected defendant's photograph. Kalkat also identified defendant at trial.

## C. *Charges and Trial*

Defendant was charged, by amended information, with two counts of second degree robbery (counts 1 & 2; §§ 211, 212.5) and two counts of impersonating a public officer (counts 3 & 4; § 146a, subd. (b)).[2] The information alleged that defendant had served three prior prison terms (§ 667.5, subd. (b)).

At trial, the defense called Dr. Robert Shomer, a forensic psychologist, as an expert in "the psychological factors that can affect perception, memory, and eyewitness identification." Dr. Shomer testified the accuracy of an eyewitness identification would be affected by: a highly emotional situation, a situation in which the witness was not forewarned about the need to recall a person's features, a cross-racial identification, lighting, distance, and duration of time.

Defendant testified at trial. He asserted that in February of 1997, he was living in Seattle, Washington. He admitted having five prior felony convictions, including two 1985 convictions of second degree burglary, 1987 and 1989 convictions of petty theft, and a 1990 conviction of "hit and run." Defendant did not find out that the police were looking for him until about eight months prior to trial, which was held in July of 2002.

The jury found defendant guilty of all four counts. In a bifurcated proceeding, the jury found true all three prior prison term allegations. Defendant was sentenced to an aggregate prison term of seven years: the three-year middle term for count 1, a consecutive one-year term for count 2, and three consecutive one-year terms for each of the prior prison term allegations. The terms for counts 3 and 4 were stayed pursuant to section 654.

## II.  DISCUSSION

### A.  *Sufficiency of the Evidence*

Defendant challenges the sufficiency of the evidence supporting his two convictions of impersonating a public officer (counts 3 & 4) and one of his robbery convictions (count 1).

---

[2] Counts 1 and 3 pertained to the incident on February 16, 1997. Counts 2 and 4 pertained to the incident on February 24, 1997.

In determining whether the evidence is sufficient to support a conviction, we apply the standard established in *Jackson v. Virginia* (1979) 443 U.S. 307, 318–319 [61 L.Ed.2d 560, 99 S.Ct. 2781], and *People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738]. "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia, supra,* 443 U.S. at p. 319.) Under this standard, "an appellate court in a criminal case . . . does not ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." (*Woodby v. Immigration Service* (1966) 385 U.S. 276, 282 [17 L.Ed.2d 362, 87 S.Ct. 483].) Rather, we "determine whether [the record] discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson, supra,* 26 Cal.3d at p. 578.)

## 1. State Public Officer

Defendant contends there is insufficient evidence that he impersonated a *state* public officer. The People contend that they were not required to prove that defendant impersonated a *state* public officer in order to obtain a conviction under section 146a, subdivision (b).

Section 146a, subdivision (b) provides: "Any person who falsely represents himself or herself to be *a public officer, investigator, or inspector in any state department* and who, in that assumed character, does any of the following shall be punished by imprisonment in a county jail not exceeding one year, by a fine not exceeding two thousand five hundred dollars ($2,500), or by both that fine and imprisonment, or by imprisonment in the state prison: [¶] (1) Arrests, detains, or threatens to arrest or detain any person. [¶] (2) Otherwise intimidates any person. [¶] (3) Searches any person, building, or other property of any person. [¶] (4) Obtains money, property, or other thing of value." (Italics added.)

Defendant claims that the phrase " in any state department" modifies each of the three preceding terms in section 146a, subdivision (b): "public officer, investigator, or inspector." The People claim that the phrase "in any state department" only modifies the last term, "inspector."

In construing section 146a, we apply settled rules of statutory construction. " 'The goal of statutory construction is to ascertain and effectuate the intent of the Legislature. [Citation.] Ordinarily, the words of the statute provide the most reliable indication of legislative intent. [Citation.] When the statutory language is ambiguous, the court may examine the context in which the

language appears, adopting the construction that best harmonizes the statute internally and with related statutes. [Citations.]' ' "When the language is susceptible of more than one reasonable interpretation . . . , we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." ' [Citation.]" (*People v. Jefferson* (1999) 21 Cal.4th 86, 94 [86 Cal.Rptr.2d 893, 980 P.2d 441].)

Both defendant and the People assert that the plain language of the statute supports their respective positions. On its face, section 146a, subdivision (b) is susceptible of either interpretation. The phrase "in any state department" could be read as modifying each of the three preceding words ("public officer, investigator, or inspector"), or it could be read as modifying only the last word ("inspector").

Defendant contends his interpretation of section 146a, subdivision (b) would harmonize the statute internally, pointing out that subdivision (a) of section 146a prohibits a person from "falsely represent[ing] himself or herself to be *a deputy or clerk in any state department. . . .*" (Italics added.) Defendant argues that in subdivision (a), the phrase "in any state department" apparently modifies both of the preceding terms, "deputy" and "clerk." He contends that subdivision (b) should be interpreted similarly.

Defendant's construction of section 146a, subdivision (b) would conflict with the use of the term "public officer" in related statutes. For instance, section 148, subdivision (a) applies to "[e]very person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician, . . . in the discharge or attempt to discharge any duty of his or her office or employment." Section 145 states that it is a misdemeanor for "[e]very public officer" who has arrested someone to willfully delay taking that person before a magistrate. Section 146 provides that it is a misdemeanor for "[e]very public officer" to arrest a person or seize property without "a regular process or other lawful authority." Section 149 applies to "[e]very public officer who, under color of authority, without lawful necessity, assaults or beats any person." In these related statutes, the term "public officer" is not modified by the phrase "in a state department." Thus, to interpret section 146a, subdivision (b) to apply to *any* "public officer" would harmonize it with related statutes.

Both defendant and the People refer to a "longstanding rule of statutory construction—the 'last antecedent rule,' " which provides that " 'qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or

including others more remote.' [Citations.]" (*White v. County of Sacramento* (1982) 31 Cal.3d 676, 680 [183 Cal.Rptr. 520, 646 P.2d 191].) Under this rule, the phrase "in any state department" would not modify the term "public officer."

In *White*, the court applied this rule to Government Code section 3303, which defines "punitive action" as "any action which may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment." The court concluded that the phrase "for purposes of punishment" applied only to the term "transfer." (*White v. County of Sacramento, supra,* 31 Cal.3d at pp. 681–682.)

Defendant argues that we should apply an exception to the last antecedent rule: "that ' "[w]hen several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." ' [Citations.]" (*White v. County of Sacramento, supra,* 31 Cal.3d at pp. 680–681.) We disagree that the natural construction of the statutory language mandates the result defendant proposes.[3]

We turn to the legislative history of section 146a. As originally enacted in 1929, section 146a provided: "Any person who falsely represents himself to be a public officer and in such assumed character arrests or detains any person or searches the person, building, or other property of any person, shall be deemed guilty of a misdemeanor . . . ." (Stats. 1929, ch. 211, § 1, p. 377.) Thus, as originally enacted, section 146a applied to *any* "public officer," not to a "public officer . . . in any state department."

Two years later, in 1931, section 146a was amended to provide as follows: "Any person who falsely represents himself to be a public officer, or investigator, inspector, deputy or clerk in any state department and in such assumed character arrests or detains or threatens to arrest or detain, or otherwise intimidates any person or searches the person, building, or other property of any person, or obtains money, or property, or other thing of value, shall be deemed guilty of a misdemeanor . . . ." (Stats. 1931, ch. 680, § 1, p. 1420.) By adding a comma after the term "public officer" and then adding the disjunctive phrase "or investigator, inspector, deputy or clerk in any state department," the Legislature evinced an intent "to designate alternative or separate

---

[3] "The second exception to the 'last antecedent rule' provides that '[w]here the sense of the entire act requires that a qualifying word or phrase apply to several preceding wo[r]ds . . . , [its application] will not be restricted . . . .' [Citations.] This is, of course, but another way of stating the fundamental rule that a court is to construe a statute ' "so as to effectuate the purpose of the law".' [Citation.]" (*White v. County of Sacramento, supra,* 31 Cal.3d at p. 681.) Defendant does not contend that this exception applies to his case.

categories. [Citations.]" (*White v. County of Sacramento, supra,* 31 Cal.3d at p. 680.) In other words, the Legislature intended the phrase "in any state department" to modify the terms "investigator, inspector, deputy or clerk," but *not* the term "public officer."

■ The Legislature's most recent amendment to section 146a was in 1993. At that time, it divided section 146a into two separate crimes. (Stats. 1993, ch. 823, § 1, pp. 4457–4458) The Legislature placed the offense of falsely impersonating a "deputy or clerk in any state department" in subdivision (a), making that offense punishable as a misdemeanor only. The Legislature placed the offense of falsely impersonating a "public officer, investigator, or inspector in any state department" in subdivision (b), making that offense a "wobbler" punishable as either a misdemeanor or a felony. Nothing in the legislative history of the 1993 amendment indicates that the Legislature intended that, by this amendment, the statute would now apply only to impersonation of a *state* public officer. The legislative history indicates that the Legislature's intent was to "raise[] the penalty for impersonating a public officer." (Assem. Com. on Pub. Saf., Analysis of Assem. Bill No. 1664 (1993–1994 Reg. Sess.).) The Legislature was concerned about the "numerous cases where serious offenses have been perpetrated on the unsuspecting public by individuals impersonating a peace officer." (*Ibid.*) To construe the amendment as *limiting* the term "public officer" to a "public officer . . . in any state department" would defeat the Legislature's intent.

■ Thus, it appears that the Legislature committed a drafting oversight when it amended section 146a in 1993, by failing to insert a comma and the word "or" after the term "public officer." Because it is clear that the Legislature intended to preserve the former construction of the statute, we conclude that the term "public officer" as used in section 146a, subdivision (b) is not modified by the phrase "of any state department."[4] Therefore, the prosecution was not required to prove that defendant falsely impersonated a *state* public officer.

## 2. False Representation

Defendant contends there was insufficient evidence to show that he falsely represented himself to be a public officer during the February 16, 1997 incident.[5] Defendant claims that neither he nor his passenger did or said

---

[4] We respectfully invite the Legislature to consider amending section 146a to preserve the statute's former construction. For instance, the Legislature could amend the statute to provide: "Any person who falsely represents himself or herself to be a public officer, or an investigator or inspector in any state department . . . ."

[5] Defendant refers to count 4. In fact, the false representation on February 16, 1997, was charged in count 3.

anything to indicate they were claiming to be public officers. Defendant contrasts the February 16 incident with the incident on February 24, when he explicitly told the victims that he was an undercover cop.

On February 16, 1997, defendant and his passenger drove up in a van and approached the victim, who had just driven his pickup truck into a light pole. Either defendant or his passenger said, "May we see some ID, sir." Because of how politely the man asked for identification, a witness (Melvin Oldeen) "assumed" the two men were off-duty police officers.

■   This evidence was sufficient to support the jury's verdict. Based on the circumstances reviewed above, the jury could find that defendant and his passenger behaved and spoke to the victim in a manner intended to falsely convey the impression that they were undercover officers. Moreover, the jury was entitled to consider the fact that one week later, defendant committed a similar offense under similar circumstances. (See Evid. Code, § 1101, subd. (b); *People v. Ewoldt* (1994) 7 Cal.4th 380, 393–394 [27 Cal.Rptr.2d 646, 867 P.2d 757].)

## 3.   Robbery

Defendant contends there was insufficient evidence to show that he committed robbery on February 24, 1997.[6] Specifically, defendant claims he did not take personal property by "force or fear." (§ 211; see § 212 [fear must be of "unlawful injury"].)

On February 24, 1997, defendant and another man approached Kalkat and Singh, who were towing a vehicle late at night. Defendant and his cohort claimed to be "undercover cop[s]" and told Kalkat that what he was doing was illegal. Kalkat was "scared" at the time. Defendant patsearched Kalkat and asked for his ID and wallet. Kalkat began to suspect that defendant was not a police officer and considered asking defendant for a badge, but opted not to because he was "scared" that defendant could physically harm him; he also feared defendant could have a gun.

■   As the prosecution argued at trial, the evidence was sufficient to support a finding that defendant took Kalkat's property by means of fear of unlawful injury. Kalkat specifically testified that defendant's actions and words placed him in fear of physical harm.

---

[6] Defendant refers to count 1. In fact, the robbery on February 16, 1997, was charged in count 2.

## B. *Instructions*

The trial court instructed the jury as follows: "The defendant is accused in Counts 3 and 4 of having committed the crime of impersonating an officer, violation of [section] 146[a, subdivision (b)] of the Penal Code. [¶] Every person who falsely represents himself to be a public officer and who in that assumed character does any of the following, is guilty of a felony: Arrests, detains, or threatens to arrest or detain any person, or otherwise intimidates any person or obtains money, property, or other thing of value. [¶] In order to prove this crime, each of the following elements must be proved beyond a reasonable doubt: Number one, a person falsely represented himself as a public officer with the specific intent of inducing another person to believe that he was a public officer; number two, in that assumed character, the person did any of the following: Arrested, detained, or threatened to arrest or detain a person, or otherwise intimidated any person, or obtained money, property, or any other thing of value with the specific intent of permanently depriving any person of his property permanently."

The trial court also provided the following instruction: "The term peace officer or public officer includes any chief of police employed in that capacity of a city, or any police officer employed in that capacity and appointed by the chief of police or the chief executive of the agency or of the city." (CALJIC No. 1.26.)

■ Defendant contends these instructions were erroneous because the prosecution was required to prove that he falsely impersonated a "public officer . . . in any state department." (§ 146a, subd. (b).) However, as we have explained, the phrase "in any state department" does not modify the term "public officer." There was no instructional error in this regard.

## III. DISPOSITION

The judgment is affirmed.

Wunderlich, J., and Mihara, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 17, 2004.