Filed 7/15/13  P. v. McGuire CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B232593 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA115410) |
| v. | |
| ANTHONY MCGUIRE et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kelvin D. Filer, Judge.  Affirmed as modified as to Taylor; affirmed and remanded for sentencing as to McGuire.

Patricia A. Scott, under appointment by the Court of Appeal, for Defendant and Appellant Anthony McGuire.

Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and Appellant Lance M. Taylor.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Susan Sullivan Pithey and David Zarmi, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Following a jury trial, Anthony McGuire and Lance M. Taylor (collectively referred to as appellants) were convicted of one count of first degree murder (Pen. Code, § 187, subd. (a)[1]) and two counts of attempted premeditated murder (§§ 664/187, subd. (a)). The jury found as to McGuire that in all three offenses he personally used and intentionally discharged a firearm within the meaning of section 12022.53, subdivisions (b) through (e), and that the offenses were committed for the benefit of a criminal street gang (§ 186.22). The jury found as to Taylor that in all three offenses, a principal personally used and intentionally discharged a firearm within the meaning of section 12022.53, subdivisions (b) through (e) and they were committed for the benefit of a criminal street gang (§ 186.22, subd (b)(1)(c). McGuire was sentenced to 90 years to life and Taylor was sentenced to 82 years to life. They filed separate notices of appeal.

McGuire contends that the prosecutor committed prejudicial misconduct during closing argument, that the trial court erred in failing to require that victim restitution be paid jointly and severally by both appellants, and the trial court erred in imposing a Government Code section 70373 assessment. Taylor contends that the court erred in instructing the jury with CALCRIM No. 400 on aiding and abetting, there was insufficient evidence that the murder was willful, deliberate and premeditated, the abstract of judgment erroneously reflects the sentences on the attempted murder counts, and the trial court erred in imposing and staying the ten-year term for the gang enhancements. Taylor joins in all issues raised by McGuire which may accrue to his benefit and McGuire does likewise.

In a supplemental brief filed February 11, 2013, McGuire contends that his 90 year to life sentence constitutes cruel and unusual punishment since he was only 17 years old at the time the offenses were committed.

---

[1]     All further undesignated statutory references shall be to the Penal Code.

2

*FACTUAL & PROCEDURAL BACKGROUND*

In the evening of August 19, 2009, Fenton Eric Anderson was at Dymin Garner's house near the corner of Laurel and Essey Streets in Compton, with a number of people, some of whom were his friends. Anderson was standing outside the house with a group which included Lamar Tatum, Kevin Sipert, Siya Body, Alex Martin and Tonisha Truelove. None of them were gang members, with the possible exception of Martin. Anderson and the others saw three to four women walking on the street and asked for their phone numbers. The women ignored them and turned down Laurel from Essey towards Ward Lane. Anderson knew to stay away from Ward Lane since it was gang territory and did not follow them. About 20 to 30 minutes later while they were standing on the porch of Garner's house, a dark blue car pulled up. Someone in the car asked, "Where the Hollys at?" in an apparent reference to the Holly Hood Piru Bloods, a gang which operated near the intersection of Laurel and Holly Avenue. Some of Anderson's friends said, "Ain't no Hollys over here," and "We don't bang." The car drove in reverse, and turned onto Essey, but was still in front of Garner's house. Anderson recognized Taylor and McGuire from the neighborhood but did not recognize the third person, who was in the front passenger seat. Anderson knew McGuire as "Cane." Anderson knew Taylor was part of the Ward Lane Crips and thought Cane was also. Taylor, the driver, McGuire, and possibly the third man got out of the car.

Taylor told Martin that he was a member of the Ward Lane Compton Crips. Martin told Taylor that he was associated with the Neighborhood Compton Crips. Taylor asked where "Hula Hoops" were. Taylor mentioned that some girls had been chased down the street. After an brief exchange between Martin and Taylor, Taylor said something like "Bust them niggers" or "Burn 'em cuz." McGuire pulled a black semiautomatic gun out of his front pants pocket and fired multiple shots.

Alejandro Velasquez, who lived across the street, also saw McGuire pull out a gun and heard seven or eight gunshots. Anderson heard six to eight gunshots. Anderson and Velasquez said that McGuire used his right hand.

3

Taylor drove off in the car, and McGuire and the third man ran down Laurel toward Ward. McGuire continued shooting.

Los Angeles County Sheriff deputies arrived shortly thereafter and found Sipert lying in the street, unable to speak. Ambulances took Tatum and Sipert to the hospital. Sipert died the following morning.

That evening at approximately 11 p.m., sheriff deputies conducted a traffic stop of a green truck near Long Beach and Alondra Boulevards. The officers knew of the shooting earlier that evening and ordered everyone out of the car. Taylor and three other men got out. Body, Martin, and Truelove were brought to the scene and identified Taylor. Deputy Lopez performed a gunshot residue test on Taylor's hands and the result was positive.[2]

McGuire was arrested on July 26, 2012. They found a notebook in his apartment with the name "Cane" written in it several times. There was also an envelope with the name "Lance" and a phone number.

*Identifications*

Velasquez and Garner identified Taylor and McGuire from photographic lineups. Garner identified Taylor at trial. Tatum identified Taylor and McGuire in court, but said he did not recognize anyone when detectives showed him a photographic lineup.

*Forensic evidence*

Deputies located 10 bullet casings in the street. The medical examiner found that Sipert died from a single gunshot wound to his abdomen.

Taylor's car was later found in the area of the Atlantic Drive Crips. Examination of the car revealed that a bullet was shot from the rear of the car through the open door. There was glass from the driver's side window inside the car.

*Gang testimony*

Los Angeles County Sheriff's Detective Eric Arias testified as a gang expert. He was familiar with the Ward Lane Compton Crips and said the area near Garner's house

---

[2] The forensic investigator did not testify which hand had gunshot residue.

4

was in their territory. Arias identified appellants as Ward Lane Compton Crips members. The area near Laurel and Holly is in the Holly Hood Piru territory. The Holly Hood gang was an enemy of the Ward Lane gang.

Arias knew Martin, who was a member of the Neighborhood Compton Crips gang. The Neighborhood Compton Crips were rivals of Ward Lane Crips and may have been aligned with the Holly Hood.

It was stipulated that McGuire was a member of the Ward Lane Crips and his moniker was "Cane."

*Defense testimony*

Taylor testified that he had been playing basketball in the area when his cousin told him that these "dudes" on the street corner were calling out obscenities. He and two friends drove to Laurel and Essey, parked and confronted approximately 9 people on the sidewalk. Taylor admitted he asked the people if they were from Holly Hood and if they had "messed with" his cousin. He did not know McGuire's name, did not know the third person in his car, and did not know if either of them had guns. An argument broke out and shots were fired, so Taylor jumped in his car and left. He did not make any statements such as, "Burn them niggers" or "burn 'em, cuz." He never said he was in a gang and was never a gang member. He did not have a gun.

Taylor's grandmother, sister, and father testified that he was not in a gang.

McGuire's uncle and a friend of McGuire's mother testified that he was left-handed and that they did not know he was a gang member.

*DISCUSSION*

*1. Sufficiency of the evidence*

Taylor argues that there was insufficient evidence of premeditation and deliberation. He argues that the evidence established only that the shooting was the result of a quick escalation of a verbal altercation.

"A verdict of deliberate and premeditated first degree murder requires more than a showing of intent to kill. 'Deliberation' refers to careful weighing of considerations in forming a course of action; 'premeditation' means thought over in advance. The process

5

of premeditation does not require any extended period of time. The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly." (*People v. Halvorsen* (2007) 42 Cal.4th 379, 419).

Three factors are indicative of premeditation: planning, motive and manner of killing. (*People v. Perez* (1992) 2 Cal.4th 1117, 1124, quoting *People v. Anderson* (1968) 70 Cal.2d 15, 24-25.)

The inquiry on appeal is whether any rational trier of fact could be persuaded beyond a reasonable doubt that appellants premeditated the murders. (*People v. Perez, supra,* 2 Cal.4th at p. 1124; *People v. Lucero* (1988) 44 Cal. 3d 1006, 1020.)

From the evidence presented, the jury could have reasonably inferred that appellants premeditated the shooting.

Taylor admitted that he went to the site to confront the people who had bothered his cousin earlier in the evening, thus there was evidence of planning and motive. The evidence that Taylor and McGuire were members of the Ward Lane Crips gang, that the area was on the border of territory claimed by the Holly Hood Piru gang, a rival of the Ward Lane Crips, is also sufficient to support the conclusion that appellants had a motive for the shootings. (*People v. Francisco* (1994) 22 Cal.App.4th 1180, 1192.) The fact that a group of two or three in a car confronted a much larger group of people supports an inference that appellants knew someone in their group would be using a gun. (*People v. Caro* (1988) 46 Cal.3d 1035, 1050.) Finally, there is no evidence that anyone in the group standing in front of Garner's house used a gun or threatened appellants in anyway. The evidence was sufficient to support a finding of planning and premeditation.

*2. Closing argument*

In closing argument, defense counsel for McGuire discussed the differing witness accounts as to who was in the car, where they were sitting, and who was the shooter. He also argued that McGuire could not be the shooter because he was left-handed and that he could not be found guilty at all because he was not present at the scene. The prosecutor objected, and the court reminded the jurors that counsel's argument did not constitute

6

evidence. McGuire's counsel continued, stating, "We never heard who is the third guy in that car. We never saw him testify. We never heard his story. Why didn't they bring him in, I don't know. They never even brought in a picture of him. If they would have brought in a picture and let us compare his picture to McGuire and see if they look similar or not. They didn't do that. That was in their power to do it and they didn't do it. And it's not the defense's side to have to prove the case. It's the District Attorney's burden to prove beyond a reasonable doubt. There's just too many loose ends." The prosecutor interjected and the court responded, "Sustained." McGuire's counsel then argued to the jury that there was conflicting evidence about which man was the shooter.

After the jurors recessed, the court stated during a bench conference it was inclined to instruct the jury that it may not consider the question of why the third person in the car was not being prosecuted. McGuire's counsel argued that he should be able to give a supplemental argument to discuss what the jury could consider regarding the third man in the car. The court agreed.

McGuire's counsel then told the jury, "In a minute the judge is going [to] read you an additional instruction and it's regarding the third man, and I'm not going to read it because that's his purview, but it does tell you that you cannot speculate as to whether or not the People intend to charge that person with a crime or not. That's not for you to determine. . . . This instruction does not tell the jury that it cannot consider evidence that someone else was the perpetrator, it merely says the jury is not to speculate on whether someone else might or might not be prosecuted. Now, what does that mean? That means that you can consider evidence that this third man was the possible shooter. You can consider evidence as to what he looked like, is there a mistake when they identified Mr. McGuire when it was really the third man? Those things are all on the table. You can consider those things, and I ask you to consider them. My position is that [the prosecutor] has not carried his burden of proof. It's a reasonable doubt in this case. There are loose ends that didn't get tied up. I don't think that any rational juror could doubt that. And therefore, I'm going to ask you to return a verdict of not guilty."

The prosecutor then stated: "The third guy, this whole thing about the third guy. Where is there any one person identifying the third guy as the shooter? Where is anybody that's at that scene going, okay, [Taylor] and [McGuire] were there, but it's the other guy that we don't recognize, that guy was the shooter. Nobody, not one person. Nobody says the third guy did anything. [Defense counsel] says, why didn't the prosecution bring them in or bring the picture in? Great, Taylor, while you're on the stand, tell us who the third guy is so we can bring the picture in. If you heard the witnesses, I don't know who the third guy was."

McGuire's counsel asked to approach the bench and the court denied the request. The prosecutor then continued, "So one witness, who you heard from, Taylor, who can tell us who that was didn't tell us. That's why we can't put a picture up there.

In a bench conference, appellants' counsel argued that the prosecutor knew the identity of the third man. The prosecutor said that the detective had interviewed a Robert LeFlore who said he was the third man, but Taylor had refused to identify LeFlore. Taylor's counsel said he did not know how to contact LeFlore.

The trial court denied McGuire's prosecutorial misconduct objection. McGuire's counsel then moved for a mistrial, which the court denied, stating, "[The prosecutor] is in his rebuttal argument and he is rebutting points that were raised during defense argument. Also, I should point out that I allowed defense to reopen to argue this issue. So again, let's be clear that it's not a situation where it was part of the prosecution's case in chief, obviously, because it's only coming out at this point. So I don't think there's any inference or anything inappropriate done on his part. . . . " When McGuire's counsel objected to this, the court responded to him, "What I hear is he is rebutting your argument about the prosecution didn't have this person, either called as a witness or there's no reference to him, this is what the defense was arguing. And as he said, and the People's position, there's one person who knows for sure who it is, who testified, and that's your client."

The court instructed the jury, "Now, the evidence does show that another person may have been involved in the commission of the crimes charged against the defendants. There may be many reasons why someone who appears to have been involved may not be a co-defendant in this particular trial. You must not speculate about whether that other person has been or will be prosecuted. Your duty is to decide whether the defendants on trial here committed the crimes charged."

Following jury verdicts, McGuire filed a motion for a new trial, again alleging prosecutorial misconduct in the closing argument. Taylor's counsel also joined, stating, "It is my honest and good faith belief that [the prosecutor] intentionally misled the jury when he made those comments as to the reasons why [ ] LeFlore was not called as a witness." The court denied the motion.

On appeal, appellants contend that the prosecutor's comments about Taylor's failure to identify the third person improperly shifted the burden of proof and implied that the prosecution had no knowledge of the identity of that witness. Appellants also argue that the reason that the prosecution did not produce the third suspect at trial was because the People did not want to give him immunity.[3]

The prosecutor's comments were misleading about the identity of the third man. Although we find the lack of candor troubling, we find no error. McGuire's counsel is the one who brought up the identity of the third man and the prosecutor was only responding to that statement. McGuire's counsel went on at length about whether the third man was the shooter and that the prosecutor did not meet his burden by producing evidence about the third man's identity. There was no affirmative evidence produced at trial about the identity of the third man. Taylor refused to identify him when asked by detectives and at trial denied knowing who the third man was. In any event, a prosecutor may comment on a defendant's failure to call logical witnesses. (*People v. Hughes*

---

[3] The prosecutor told the court during the defense's motion for a new trial that LeFlore admitted he was in the car, but Le Flore was not called as a witness because the prosecutor did not want to grant him immunity.

(2002) 27 Cal.4th 287, 372.)  In addition, the jury was instructed that counsel's argument was not evidence.

### 3. Jury Instruction

The court instructed the jury with the 2010 revised version of CALCRIM No. 400 that "A person is guilty of the crime whether he committed it personally or aided and abetted the perpetrator."

Subsequently, the prosecutor argued in closing, "The law says if you help, you're equally as guilty."  A prior version of CALCRIM No. 400 provided in pertinent part:  "A person is equally guilty of the crime whether he or she committed it personally or aided and abetted the perpetrator who committed it."  *People v. Samaniego* (2009) 172 Cal.App.4th 1148 held that this version of the instruction could be misleading, resulting in the 2010 revision, which the court used here.

Neither defense counsel objected to the prosecutor's arguments.

"Generally, a person who is found to have aided another person to commit a crime is 'equally guilty' of that crime.  (§ 31; 1, Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Introduction to Crimes, § 77, pp.122-23, italics added.)"  (*People v. Lopez* (2011) 198 Cal.App.4th 1106, 1118.)  However, an aider and abetter can be guilty of a lesser crime if he did not have the same mental state as the perpetrator.  (*Samaniego, supra*, 172 Cal.App.4th at pp. 1164-1165; *People v. Nero* (2010) 181 Cal.App.4th 504.)

Here, the revised version of the instruction was given without the term "equally." Appellants contend that the prosecutor's closing argument misstated the law.  However, since no objection was made, the claim of error was forfeited, since an admonition or clarifying instruction from the court could have corrected the error.  (*Samaniego, supra*, 172 Cal.App.4th at pp. 1163-1165.)  But in any event, no prejudice occurred.  The jury was instructed to follow the court's instructions and not the argument of counsel (CALCRIM No. 200)  Jurors are presumed to have followed the court's instructions. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

10

Moreover, there was substantial evidence to support a theory that Taylor had the same intent as McGuire. Taylor admitted he had a motive to confront the group of partygoers and several eyewitnesses testified Taylor ordered McGuire to shoot.

### 4. Sentencing

At sentencing, the court ordered Taylor to pay from prison earnings $7,500 plus interest to the Victim's Compensation Fund for funeral expenses, and $3,997.33 plus interest to Tonya Simpson for Sipert's funeral expenses. It ordered a mandatory restitution fine in the amount of $5,000 to be paid from prison earnings pursuant to section 1202.4, subdivision (b). It also ordered a parole revocation fine of $5,000 pursuant to section 1202.45 which it stayed, and a mandatory court security fee of $40 for each conviction, and a construction fee of $40 per conviction. It then ordered McGuire to pay victim restitution of $7,500 to the Victim's Compensation fund plus $3,997.33 to Tonya Simpson, a section 1202.4, subdivision (b) $5,000 restitution fine from prison earnings, a parole revocation restitution fine of $5,000 pursuant to section 1202.45 which it stayed, a mandatory court security fee of $40 for each conviction and a construction fee of $40 per conviction, for a total of $120 for each of those fines.

### a. Victim Restitution

Both appellants contend that the court should have ordered the victim restitution to be paid jointly and severally between them.

The Augmented Clerk's transcript filed after respondent's brief was filed indicates that the trial court entered orders listing the appellants as jointly and severally liable for victim restitution. It appears that the court intended to make the liability for restitution joint and several, and accordingly the judgment must be modified. (*People v. Blackburn* (1999) 72 Cal.App.4th 1520, 1534-1535.)

### b. Government Code fine

Appellants also contend that only a $90 "construction fee" should have been imposed instead of $120. The People agree.

Government Code section 70373 provides: "(a)(1) to ensure and maintain adequate funding for court facilities, an assessment shall be imposed on every conviction

11

for a criminal offense. . . . The assessment shall be imposed in the amount of thirty dollars ($30) for each misdemeanor or felony . . . ."

The judgments should therefore be modified to provide for a $30 fine for each count pursuant to Government Code section 70373 for a total of $90 for each of the appellants.

### c. Erroneous computation of Taylor's sentence

The court sentenced appellant Taylor on Count 1 to 25 years to life for the murder, 25 years to life for the weapon enhancement, and imposed and stayed a ten-year term for the section 186.22, subdivision (b)(1)(c) gang enhancement for a total on that count of 50 years to life. As to count 2, it sentenced him to a concurrent term of life with parole plus 25 years to life for the weapons enhancement and also imposed and stayed a ten-year term for the gang enhancement. On count 3, it sentenced him to a consecutive term of life with parole plus 25 years to life for the weapons enhancement and imposed and stayed a ten-year term for the gang enhancement for a total on that count of 32 years to life. It stated as to counts 2 and 3, there would be a minimum period of seven years before he would be eligible for parole.[4]

---

[4]    The court stated: ". . . I indicated I was going to run Count 1 and 2 concurrent, and then Count 1 and . . . Count 3 consecutive to Counts 1 and 2. . . . . As to Count 1 . . . you're sentenced to 25 years to life. That's pursuant to Penal Code section 190(A), mandatory requirement for that conviction. That's the murder count in Count 1. There also is also a mandatory consecutive period of 25 years to life pursuant to 12022.53(d). The jury also found true the special allegation pursuant to 186.22 (b)(1)(c). There will be no additional time for that code section, so the ten years is stayed pursuant to Penal Code Section 654. Also the court is required pursuant to Penal Code section 12022.53 (f) to impose the enhancement with the longest sentence. I'm only imposing one per offense. That's why there's no additional time for the other gun use allegation. And no additional time for the gang allegations. So as to Count 1, total period of 50 years to life. As to Count 2, the attempted murder violation of Penal Code section 664/187 (a), the defendant is sentenced to life with the possibility of parole. He'll be eligible for parole after seven years pursuant to Penal Code section 3046. There also is mandatory 25 years to life, mandatory and consecutive, pursuant to Penal Code section 12022.53 (d) (e)(1). So as to Count 2, there's no additional time for 186.22 (b)(1)(c), so the ten years is stayed pursuant to Penal Code section 654. So as to Count 2 the time is 32 years to life. That time is to run concurrent with the time

12

The abstract of judgment indicates the total sentence for Taylor was 82 years to life.

Taylor contends that the court erred in imposing and staying the gang allegation terms and that those terms should be stricken instead. He argues that section 186.22, subdivision (b)(1)(C) does not apply where the violent felony is punishable by imprisonment in the state prison for life. Taylor also contends that the proper sentence on counts 2 and 3 was an indeterminate life sentence and not seven years to life, so the abstract of judgment must be amended.

When a sentence of life in prison with the possibility of parole is imposed, the minimum period of confinement before parole eligibility is seven years. (§ 3046 subdivision (a)(1); *People v. Jefferson* (1999) 21 Cal.4th 86, 92-93.) Therefore, the trial court correctly aggregated the sentence; however, it appears the ten-year gang enhancement was erroneously imposed.

The version of section 12022.53 operative at the time Taylor was sentenced provides that "(e)(2) An enhancement for participation in a criminal street gang (commencing with section 186.20) . . . shall not be imposed on a person in addition to an enhancement imposed pursuant to this subdivision, *unless the person personally used or personally discharged a firearm* in the commission of the offense." Therefore, the court could not impose both the penalties prescribed by section 186.22 subdivision (b)(5) and

in count 1. And the reason the court is ordering that the time in count 1 and 2 be concurrent is because the offenses were committed closely in time and place so as to indicate a single period of aberrant behavior. I'm relying on the witness' testimony that the victim in Count 3, that he heard six to eight shots, and those first four were back to back. That's when he saw the victim in count 1 and victim in count 2. So there was a break between the shooting that occurred as it relates to the victim in count 1 and 2, and then there was a subsequent shooting as to count 3. So as to Count 3, again, that a conviction for attempted murder pursuant to 187(a). Again that's life in prison with the possibility of parole. There's a minimum period of seven years that has to be served before the defendant is eligible for [parole]. There's also the mandatory period of 25 years to life. That's mandatory and consecutive pursuant to Penal Code section 12022.53 (d)(b)(10. No additional time is imposed for the gang allegation pursuant to Penal Code section 186.22 (b)(1)(c). The ten years is stayed pursuant to Penal Code section 654. So your total prison commitment as to Count 3 is 32 years to life. That time will run consecutive to the time that was imposed as to Count 1 and 2. . . .

13

section 12022.53, subdivision (d) since Taylor did not personally use or discharge a firearm in committing the gang-related offense. (*People v. Brookfield* (2009) 47 Cal.4th 583, 593-594; *People v. Salas* (2001) 89 Cal.App.4th 1275, 1281-1282.) In addition, "section 12022.53, subdivision (e)(2) prevents the imposition of the 15-year minimum term specified in section 186.22, subdivision (b)(5)." (*People v. Salas, supra*, 89 Cal.App.4th at pp. 1281-1282.)

 *5. Cruel and Unusual Punishment*

 McGuire contends in a supplemental brief that because he was only 17 years old at the time of the incident, his sentence constitutes cruel and unusual punishment.[5]

 In *People v. Caballero* (2012) 55 Cal.4th 262, the California Supreme Court found that a 110 year to life sentence for a 16-year-old who was convicted of three gang-related attempted murders was excessive punishment, citing *Miller v. Alabama* (2012) 567 U.S. ___, and *Graham v. Florida* (2010) 560 U.S. ___. It held that a sentencing court must consider circumstances in mitigation such as age, level of involvement and physical mental development before determining at what point juveniles can seek parole. (*People v. Caballero, supra,* 55 Cal.4th at p. 268.)

 In *Miller, supra*, 567 U.S. ____ [132 S.Ct. 2455] which was decided after McGuire was sentenced, the Supreme Court recognized that juveniles have diminished culpability and greater prospects for reform, and emphasized that the trial court must have "the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." (*Id*. at pp. 2464, 2475.) It requires a sentencing court to take into account how children are different, and how those differences should affect the decision of whether to irrevocably sentence them to a lifetime in prison." (*Id*. at p. 2469.)

 *Graham v. Florida, supra*, 560 U.S. ___ [130 S.Ct. 2011] held that a categorical ban on life without parole sentences against juvenile offenders applies to all non-homicide cases, including a term of years sentence that amounts to the functional

---

[5] According to the information, McGuire's birthdate is July 9, 1992. At the time the crimes were committed (August 19, 2009) he would have been 17 years and 1 month.

equivalent of life without parole sentence. (*People v. Caballero, supra,* 55 Cal.4th at pp. 267-268.)

McGuire was 17 years old at the time of the crime. He was convicted of one count of murder and two counts of attempted murders and sentenced to 90 years to life (the functional equivalent of life without parole since it would most likely exceed his life expectancy). It was undisputed that he was a gang member and that he fired a gun at unarmed bystanders who did no more than call out to females walking on the street. He was not on drugs or on medication at the time and there was no evidence that he suffered from any mental impairment.

McGuire's defense consisted of witnesses who said he was not a gang member and that he was left-handed.

There is no indication that the trial court considered McGuire's age, or his physical and mental development when imposing the sentence. No comments were made by either McGuire, his counsel or the court at the sentencing hearing. There was nothing in the probation report indicating he was a juvenile, other than his birthdate.

It is clear the trial court did not recognize the significance of McGuire's youth in imposing the "functional equivalent " of a life without the possibility of parole sentence. We therefore must remand so the trial court will have the opportunity to reconsider its sentence in light of *Miller* and *Caballero*.

## DISPOSITION

The judgment as to Taylor is modified to strike the ten-year sentence enhancements pursuant to section 186.22 on counts 1, 2, and 3, to reflect imposition of a $30 fee pursuant to Government Code section 70373 for each count for a total of $90 and to provide expressly that he and McGuire are jointly and severally liable for direct victim restitution.

Upon issuance of the remittitur as to Taylor, the superior court is directed to prepare an amended abstract of judgment and deliver it to the Department of Corrections and Rehabilitation.

15

The judgment of conviction as to McGuire is affirmed.  The matter is remanded for resentencing in accordance with the views expressed herein.


**WOODS, J.**


**We concur:**



**PERLUSS, P. J.**                                    **ZELON, J.**