Filed 6/30/14  P. v. Morrison CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B252837 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA357645) |
| v. | |
| AMON MORRISON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ronald S. Coen, Judge.  Affirmed.

Roberta Simon, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

A jury found defendant and appellant, Amon Morrison, guilty of two counts of willful, deliberate and premeditated attempted murder (Pen. Code, §§ 187, subd. (a), 664),[1] during which a principal caused one of the victims great bodily injury by shooting him with a firearm (§§ 12022.53, subds. (b), (c), (d), (e)(1)) and one count of shooting a firearm from a motor vehicle (§ 12034, subd. (c)). The jury then found all three crimes had been committed for the benefit and promotion of a criminal street gang (§ 186.22, subd. (b)(1)(C)). The trial court sentenced Morrison to two consecutive life terms for the attempted murders and two consecutive terms of 25 years to life for the use of a firearm, then stayed the term for shooting from a motor vehicle and the gang enhancement. Under the sentence imposed, Morrison, who was 17 years old when the crimes were committed, would not be eligible for parole until he was approximately 84 years old.

On appeal, this court affirmed the judgment with regard to the issues raised involving the substantive offenses, but reversed and remanded the matter to the trial court for reconsideration of Morrison's sentence. (See *People v. Morrison* (Feb. 7, 2013, B235563) [nonpub. opn.].) On remand, the trial court sentenced Morrison to a total term of life with the possibility of parole after seven years plus 25 years to life. Given the sentence imposed, considered with Morrison's presentence custody credits, it appears he will be eligible to apply for parole when he is approximately 42 years of age. Morrison appeals from the judgment entered following resentencing. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*[2]

On the morning of June 8, 2009, as Robert Baker and Autumn Christian were walking on Rimpau near 17th Street, a black Toyota RAV4 pulled up and stopped

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

[2]    Morrison's motion to augment the record on appeal with the information in which he was charged in the Superior Court (case No. BA357645), the initial opinion filed in this case (*People v. Morrison, supra,* B235563) and the remittitur filed in case number B235563 was granted on March 24, 2013. The facts have been summarized from the opinion in the initial appeal.

approximately four feet from them. There were three people in the car: Morrison, who was the driver, Leonard Curtis, who was seated in the front passenger seat, and a passenger in the rear seat, who neither Baker nor Christian could identify because the individual had been wearing a hood. Both Morrison and Curtis yelled out, " 'Where you from?' " Morrison then apparently called out, " 'This is 20 Bloods, fuck crabs.' " Baker, who indicated he was not a gang member, said he did not bang. However, after both Morrison and Curtis yelled, " 'Rollin' 20's Blood, fuck crabs,' " Curtis fired a gun, hitting Christian in the leg. With help from Baker, both Christian and Baker ran from the area.

On June 9, 2009, the day after Christian was shot, officers saw a Toyota RAV4 which had been reported stolen and matched the description of the car involved in the shooting. When the officers turned on their patrol car's lights and sirens, the RAV4 did not stop. Instead the driver of the car attempted to evade the officers and, while doing so, crashed into a tree. Three people got out of the car, including Morrison and Curtis. Curtis immediately surrendered. Morrison fled, but was later detained.

At trial, Los Angeles Police Officer John Maloney, the People's expert witness on gangs, testified Morrison and Curtis were members of the Rollin 20's gang. The Rollin 20's is a Bloods gang and a rival of the Crips gang, which controlled the area in which the shooting occurred. In Maloney's opinion, Morrison committed the crimes for the benefit of his gang.

2. *Procedural history.*

In an information filed December 28, 2009, Morrison was charged in count 1 with the attempted, willful, deliberate and premeditated murder of Autumn Christian (§§ 664, 187, subd. (a)), during which a principal personally and intentionally discharged a firearm proximately causing great bodily injury to Christian (§ 12022.53, subds. (b), (c), (d) & (e)(1)). In count 2, Morrison was charged with the attempted, willful, deliberate and premeditated murder of Robert Baker (§§ 664, 187, subd. (a)), during which a principal personally and intentionally discharged a firearm (§ 12022.53, subds. (b) & (c)). In count 3, Morrison was charged with shooting from a motor vehicle (§ 12034,

subd. (c)). It was further charged the offenses alleged in counts 1, 2 and 3 had been committed for the benefit of, at the direction of, and in association with a criminal street gang with the specific intent to promote, further and assist in criminal conduct by gang members (§ 186.22, subd. (b)(1)(C)).

On August 2, 2011, a jury found Morrison guilty of counts 1, 2 and 3. In addition, as to all three counts, the jury found true the allegations a principal had used a firearm and the crimes had been committed for the benefit of and in association with a criminal street gang.

At proceedings held on August 25, 2011, the trial court sentenced Morrison to life in prison for the attempted murder of Christian as alleged in count 1, plus 25 years to life for the finding a firearm was used during the offense. For the attempted murder of Baker as alleged in count 2, the trial court imposed a consecutive life term plus 25 years to life for the use of a firearm. The trial court imposed, then stayed, the sentence for count 3, shooting from a motor vehicle, and stayed imposition of sentence for the remaining enhancements.

Generally, premeditated attempted murder carries a life sentence, after serving seven years of which an inmate is eligible for parole. (§ 3046, subd. (a)(1); see *People v. Jefferson* (1999) 21 Cal.4th 86, 97.) However, in its February 7, 2013 opinion, this court determined, in instances such as the present one where gang allegations have been found true, the inmate is not eligible for parole until after a minimum of 15 years of incarceration (§ 186.22, subd. (b)(5)).[3] The parties therefore agreed that, under the circumstances presented, Morrison would not be eligible for parole until he was approximately 84 years old.[4]

As this court stated in its prior opinion, "The United States Supreme Court has expressed concern about sentencing juvenile offenders to prison terms that prevent any

---

[3]    In addition, Morrison would be entitled to only 15 percent of good time/work time credit. (§ 2933.1.)

[4]    Morrison was born on October 3, 1991.

possibility of rehabilitation and release.  This concern is based on, among other things, the ' "lack of maturity" ' and ' "underdeveloped sense of responsibility" ' more common to youth than to adults; their vulnerability or susceptibility to negative influences and outside pressures; and that the character of a juvenile is not as well formed as an adult's. (*Roper v. Simmons* (2005) 543 U.S. 551, 569-570.)  'These salient characteristics mean that "[i]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption."  [Citation.]  Accordingly, "juvenile offenders cannot with reliability be classified among the worst offenders." . . . [¶] . . . Juveniles are more capable of change than are adults, and their actions are less likely to be evidence of "irretrievably depraved character" than are the actions of adults.' (*Graham v. Florida* (2010) [560] U.S. [48, 68] (*Graham*).)"  (*People v. Morrison, supra,* B235563, at pp. 10-11.)

In its February 7th opinion, this court recognized that, based on federal cases such as *Graham*, *supra*, 560 U.S. 48, "our Californian Supreme Court has concluded that 'sentencing a juvenile offender for a nonhomicide offense to a term of years with a parole eligibility date that falls outside the juvenile offender's natural life expectancy constitutes cruel and unusual punishment in violation of the Eighth Amendment.' (*People v. Caballero* (2012) 55 Cal.4th 262, 268.)"  (*People v. Morrison*, *supra*, B235563, at p. 11.) Thus, the *Caballero* court found "a sentence rendering the juvenile defendant, who had committed attempted murder ineligible for parole for over 100 years was unconstitutional.  (See also *People v. Mendez* (2010) 188 Cal.App.4th 47, 50-51 [84-years-to-life sentence was the equivalent of life without parole and therefore cruel and unusual punishment].)  A state must provide a juvenile offender ' "with some realistic opportunity to obtain release" from prison during his or her expected lifetime. [Citation.]'  (*Caballero*, at p. 268.)"  (*People v. Morrison, supra,* B235563, at p. 11.)

This court then concluded, "Morrison's sentence of 80 years to life [was] unconstitutional under *Caballero* because it [was] the functional equivalent of a life-without-possibility-of-parole sentence for a juvenile in a nonhomicide case" and the

Court remanded the matter to the trial court for reconsideration of Morrison's sentence. (*People v. Morrison, supra,* B235563, at p. 11.)

    3. *Resentencing.*

    The trial court resentenced Morrison on September 12, 2013. The court first noted it had "read and considered the new report of the probation officer, along with various items that [had] been submitted to [the court] by the defense," including a letter from Morrison, letters on his behalf and a copy of a high school equivalency certificate earned while he was in prison. Defense counsel then asked the court to reduce the charge from attempted first degree murder to attempted second degree murder. Counsel added that Morrison had "a very minimal record" and was "very young at the time" of the crime. The trial court indicated "[t]here [was] no such thing as attempted murder in the second degree," then noted Morrison "was [only] four months below the 18 [year] limit." Defense counsel responded that Morrison had been in jail for approximately three years and "really [had] come to grips with the fact that he want[ed] to make something of himself" and had realized that associating with gang members was "not the road to take." Counsel indicated, although he did not "normally vouch for people, [he] . . . really believe[d]" there was hope for Morrison.

    Before resentencing Morrison, the trial court noted that "the opinion of the Court of Appeal stat[ing] that the life sentence that was given was subject to a minimum [of] 15 years was in error." The court continued, "It would be a minimum of 7 years because the gang enhancement was used [without a finding Morrison personally used a firearm for purposes of] the gun discharging enhancement. And consequently the 15 years would not apply under *People* [*v.*] *Gonzalez*, at 180 Cal.App.4th 1420." Then, taking the *Caballero* factors into account, the trial court indicated it would "run the [sentences on the] counts concurrently."

    As to count 1, "a violation of . . . section[s] 664 and 187[,] subdivision (a), with the [allegations of ] premeditat[ion] and deliberat[ion] . . . having been found true," the trial court sentenced Morrison to state prison for life with the possibility of parole. The minimum period Morrison was to serve before parole could be granted was seven years.

With regard to enhancements, the trial court then, "[p]ursuant to the dictates of . . . section 12022.53[,] subdivision (d) and subdivision (e) subdivision (1), . . . levied an additional and consecutive [term of] 25 years to life. [¶] Pursuant to . . . section 12022.53, subdivision (c) and subdivision (e) subdivision (1), [the trial court] levied an additional 20 years in state prison[, ] stayed [the term] pursuant to the dictates of . . . section 12022.53[, subdivision] (f)[,] [¶] [and, p]ursuant to . . . section 12022.53 subdivision (b) and subdivision (e) subdivision (1), . . . levied an additional ten years in state prison[, then again] stayed [the term] pursuant to the dictates of . . . section 12022.53 subdivision (f). [¶] Pursuant to the dictates of . . . section 186.22 subdivision (b) subdivision (1), [the gang enhancement, the trial court] levied[, then stayed] an additional 10 years in state prison . . . under the dictates of *People* [*v.*] *Sinclair* [(2008)] 166 Cal.App.4th 848 . . . [because] the gang enhancement was used for the gun discharging under . . . section 12022.53[, subdivisions] (d) and (e)(1) . . . . Consequently, [it could not] be used . . . to enhance the minimum term [Morrison was required to serve before he was eligible for] parole."

For count 2, "the same crime [as that alleged in count 1, attempted murder], a violation of . . . section[s] 664 and 187 subdivision (a) with [findings of] premedit[ation] and deliberat[ion,]" the trial court imposed a sentence identical to that imposed with regard to count 1, then ordered the sentence to run concurrently to that imposed for count 1 in order "to comply with the dictates of the Court of Appeal."

For count 3, "a violation of . . . section 12034 subdivision (c), [shooting from a motor vehicle, the trial court sentenced Morrison] to state prison for the mid-term of five years. That [term was] stayed pursuant to the dictates of . . . section 654[,] [s]aid stay to become permanent upon the successful completion of the sentence[s imposed] in counts 1 and 2. [¶] Pursuant to . . . section 12022.53 subdivision (d) and subdivision (e) subdivision (1), [prohibiting a defendant from discharging a firearm and inflicting great bodily injury, the trial court imposed] an addition[al] 25 years to life. Again, [however, the term was] stayed . . . ."

In total, Morrison was sentenced to life in prison, with the possibility of parole after seven years, plus 25 years to life. With regard to presentence custody credits, the trial court indicated Morrison was to be given credit for 1556 days actually served and that the Department of Corrections and Rehabilitation was to determine the number of conduct credits to which he was entitled. Considering the sentence imposed and Morrison's presentence custody credits, it appears he will be eligible to apply for parole when he is approximately 42 years of age.

After imposing the prison term, the trial court ordered Morrison to pay a $10,000 restitution fine (§ 1202.4, subd. (b)), a suspended $10,000 parole revocation fine (§ 1202.45), a $120 security assessment (§ 1465.8, subd. (a)) and a $90 criminal conviction assessment (Gov. Code, § 70373).

On November 6, 2013, Morrison filed a timely notice of appeal from the resentencing.

## CONTENTIONS

After examination of the record, counsel filed an opening brief which raised no issues and requested this court to conduct an independent review of the record.

By notice filed March 6, 2014, the clerk of this court advised Morrison to submit within 30 days any contentions, grounds of appeal or arguments he wished this court to consider. This court granted Morrison's request for an extension of time within which to submit his arguments and contentions to May 5, 2014. On May 12, 2014, Morrison filed a supplemental brief in which he argues the sentence of life in prison, with the possibility of parole after seven years, plus 25 years to life imposed at the second sentencing proceeding was excessive and still amounts to cruel and unusual punishment. He asserts as a juvenile offender who did not kill or intend to kill, and who was merely an aider and abettor who did not even know there was a firearm in the car, his culpability was greatly diminished. In addition, as a juvenile who had experienced an extremely difficult childhood which involved mental illness and the use of drugs, he lacked the maturity and sense of responsibility necessary to warrant the sentence imposed.

Morrison's contentions are without merit.  With regard to the evidentiary issues, a jury found Morrison guilty of the crimes charged beyond a reasonable doubt.  As to his second sentencing, we note the trial court recognized that, at the time the crimes were committed, Morrison was only four months shy of being an 18-year-old adult.  Finally, as we indicated at page 4, *ante*, in *People v. Caballero, supra*, 55 Cal.4th at p. 268, the California Supreme Court stated that when a juvenile offender commits an offense which is not a homicide, the state must provide the juvenile offender " ' " 'with some realistic opportunity to obtain release' from prison during his or her expected lifetime. [Citation.]" (*Caballero*, at p. 268.)' "  Given the sentence imposed, considered with Morrison's presentence custody credits, it appears he will be eligible to apply for parole when he is approximately 42 years old.  That is well within his expected lifetime.

## REVIEW ON APPEAL

We have examined the entire record and are satisfied counsel has complied fully with counsel's responsibilities.  (*Smith v. Robbins* (2000) 528 U.S. 259, 278-284; *People v. Wende* (1979) 25 Cal.3d 436, 443.)

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

KLEIN, P. J.

KITCHING, J.