Filed 10/28/15  P. v. Williams CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHARMAR WILLIAMS,<br><br>    Defendant and Appellant. | B263193<br><br>(Los Angeles County<br>Super. Ct. No. YA084964) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Steven R. Van Sicklen, Judge.  Affirmed as modified.

———

H. Russell Halpern, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

———

Charmar Williams appeals from the judgment entered after a jury convicted him of willful, deliberate and premeditated attempted murder and being a felon in possession of a firearm. Williams contends that his trial counsel was ineffective. We requested briefing on whether the trial court erred by using the "Three Strikes" law to impose a second life term on the attempted murder count. We reject Williams's ineffective assistance of counsel argument but conclude that his sentence on the attempted murder count is erroneous. We modify the sentence to impose a 14-year minimum period of confinement on the life term and to strike the second life term.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Information*

An information, filed on October 24, 2012, charged Williams with willful, deliberate and premeditated attempted murder (Pen. Code, §§ 664, subd. (a), 187, subd. (a)[1]) and being a felon in possession of a firearm (§ 29800, subd. (a)(1)). The information specially alleged firearm enhancements pursuant to section 12022.53, as well as a prior serious or violent felony conviction for robbery (§ 211) that qualified as a strike under the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and subjected Williams to a section 667, subdivision (a)(1), enhancement.

2. *The Evidence at Trial*

Williams and Sebastian Pitts, whose girlfriend was Williams's ex-wife, had a history of altercations. In 2008, Williams stabbed Pitts in the neck with a key. Pitts required stitches and rehabilitation due to his injuries. Williams said that he had stabbed Pitts to protect himself because Pitts, who was much larger than Williams, was making verbal threats toward him; Pitts said that Williams was yelling at him before the stabbing. Several years later, Pitts, in retaliation for the stabbing, beat up Williams outside a grocery store, causing Williams severe injuries.

A few months after the grocery-store incident, on the afternoon of July 17, 2012, Pitts and his girlfriend left the girlfriend's eye doctor appointment and drove to a

---

[1]     Statutory references are to the Penal Code.

2

shopping center. As Pitts was parking his car, a white sedan entered the lot and stopped at the curb. Williams exited the sedan and walked quickly to Pitts's van, while carrying a gun at his side. As Pitts attempted to exit the van, Williams shot Pitts multiple times, hitting him in the left arm and right leg and skimming his chest. Williams returned to his car and lay down in the back of the car while his girlfriend drove to the hospital. A bystander, who had witnessed the shooting, called 911. Pitts was in the hospital for a week due to his injuries.

Williams, testifying in his defense, admitted to shooting Pitts multiple times but said he did so because Pitts was following him, he feared Pitts and he believed Pitts had a weapon with him, either a gun or a knife. According to Williams, after he drove into the parking lot to take his girlfriend to pick up a prescription, he noticed Pitts's van in the lot. He stopped his car at the curb, retrieved his gun from the glove compartment, put it in his pocket and walked to Pitts's van. Pitts was standing outside the van. Believing he saw the handle of a gun or knife in Pitts's waistband, Williams took the gun out of his pocket and fired multiple shots at Pitts. He returned to his car, and he and his girlfriend drove away.

Police did not find any weapon at the scene of the shooting or in Pitts's van. After apprehending Williams, police recovered a gun from inside a sock in his dresser drawer.

3. *The Jury's Verdict and Sentencing*

A jury convicted Williams of both counts and found true the special allegations under section 12022.53. After Williams waived a jury trial on the prior conviction allegations, the trial court found them to be true. The court sentenced Williams to state prison for life on the attempted murder count and added a second life term based on the Three Strikes law, plus 25 years to life for the firearm enhancement, five years for the section 667, subdivision (a)(1), enhancement and four years (the two-year midterm doubled) for being a felon in possession of a firearm.

3

1.      *Ineffective Assistance of Counsel*

        "'"[T]he right to counsel is the right to the effective assistance of counsel."' [Citation.] 'The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' [Citation.] 'A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.' [Citation.]" (*In re Valdez* (2010) 49 Cal.4th 715, 729.) As a result, if a reviewing court concludes that the alleged ineffective assistance did not prejudice the defendant, it need not address whether counsel's performance was deficient. (*People v. King* (2010) 183 Cal.App.4th 1281, 1298.)

        After the jury returned its verdict but before sentencing, Williams substituted in new counsel. That counsel filed a new trial motion in which Williams argued that his trial counsel was ineffective for failing to challenge the credibility of a witness—the bystander to the shooting—because several of Williams's family members and his pastor saw the witness exit Pitts's van with Pitts at the lunch recess on the day of the preliminary hearing, and some saw the witness and Pitts "high five" each other after exiting the van. Williams's mother and pastor said they reported this sighting to trial counsel. Williams's mother also stated that she gave the attorney who represented Williams at the preliminary hearing a notarized document outlining her observations of the witness and Pitts and later provided a copy to trial counsel. The People stipulated that

4

the document was in the file of the attorney at the preliminary hearing, which was turned over to trial counsel. Trial counsel testified that he was not made aware of any contact between the witness and Pitts and if he had been he would have investigated the matter. Williams argued that the observations of the witness with Pitts were critical and that trial counsel should have cross-examined the witness to undermine his credibility as an independent bystander.

The trial court denied the new trial motion correctly. Assuming that the witness and Pitts did interact at the lunch recess of the preliminary hearing and that trial counsel knew or should have known about the interaction, it is not reasonably probable that questioning the witness about this interaction would have led to a different verdict. The evidence against Williams was very strong. The undisputed evidence, even according to Williams's own testimony, demonstrated that Williams walked up to Pitts's van and shot Pitts multiple times. Williams testified that he saw a handle in Pitts's waistband and thought it was a gun or a knife. But no weapon was found at the scene of the shooting or in Pitts's van. The witness testified that he did not see Pitts's waistband. He thus was unable to shed light on the crucial distinction between the testimony of Williams and Pitts, that being whether Pitts might have been carrying a weapon.

2.      *Sentence on the Count for Willful, Deliberate and Premeditated Attempted Murder*

On the attempted murder count, the trial court sentenced Williams to life pursuant to section 664, subdivision (a), and then added a second life term to "double" the sentence under the Three Strikes law based on Williams's prior strike conviction for robbery. This was error.

When a defendant is convicted of willful, deliberate and premeditated murder, and has a prior strike conviction, the sentence-doubling requirement of the Three Strikes law in section 667, subdivision (e)(1), does not allow for imposition of a second life term. (*People v. Jefferson* (1999) 21 Cal.4th 86, 99.) Rather, "[b]ecause section 3046 requires that a defendant sentenced to life imprisonment with the possibility of parole serve 'at least seven calendar years or . . . a term as established pursuant to any other section of law that establishes a [greater] minimum period of confinement' before

5

becoming eligible for parole,' it sets forth a 'minimum term' within the meaning of section 667(e)(1), which provides that for a defendant with a prior strike the 'minimum term for an indeterminate term shall be twice the term otherwise provided as punishment for the current felony provision.'" (*Id*. at p. 96.) In this case, there was no applicable greater minimum period of confinement. As a result, the court was required to sentence Williams to life with a minimum period of confinement of 14 years, doubled from seven years. We, therefore, modify Williams's sentence on the count for willful, deliberate and premeditated attempted murder to impose a 14-year minimum period of confinement on the life term and to strike the second life term.[2]

## DISPOSITION

The judgment is modified to impose a 14-year minimum period of confinement on the attempted murder count and to strike the second life term on the attempted murder count. As modified, the judgment is affirmed. The trial court shall forward a corrected abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.                          LUI, J.

---

[2] With this modification, Williams's sentence is life, with a 14-year minimum period of confinement (seven years doubled based on the Three Strikes law), on the attempted murder count, plus 25 years to life for the section 12022.53, subdivision (d), enhancement, five years for the section 667, subdivision (a)(1) enhancement and four years (the midterm of two years doubled) on the count for being a felon in possession of a firearm.