Filed 5/15/23  P. v. Shaler CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MATTHEW DAVID SHALER,<br><br>    Defendant and Appellant. | D080404<br><br><br><br>(Super. Ct. No. SCN426048) |

APPEAL from a judgment of the Superior Court of San Diego County, David G. Brown, Judge.  Affirmed with directions.

Christine M. Aros, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

After a jury convicted Matthew David Shaler of making a criminal threat against his brother (Pen. Code,[1] § 422), the trial court suspended imposition of sentence and placed him on three years of formal probation. Although newly amended section 1203.1 shortened the maximum probation for most felonies to two years as a result of Assembly Bill No. 1950 (2019–2020 Reg. Sess.) (Assembly Bill 1950), the trial court found an exception applied because section 1203.097 required a minimum three-year probation term where the victim of the crime is the defendant's brother (Pen. Code, § 1203.097, subd. (a); Fam. Code, § 6211.)

On appeal, Shaler asserts we must reduce his probation term to two years because the People "never charged" him with a violation of a section 1203.097 and "no jury made that determination" in violation of the *Apprendi*[2] rule. He further asserts we must vacate his fines and fees because the trial court abused its discretion in doing so after it had determined he lacked the ability to pay in a separate misdemeanor driving under the influence (DUI) case. We affirm the judgment with directions the trial court correct a clerical error on the order granting formal probation.

FACTUAL AND PROCEDURAL BACKGROUND

The People charged Shaler with making a criminal threat against his brother, Garrett Shaler, (§ 422; count 1) and exhibiting a deadly weapon (a knife) (§ 417, subd. (a)(1); count 2). The evidence at trial established the following facts.

---

[1] All further undesignated statutory references are to the Penal Code.

[2] *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 (*Apprendi*).

In August 2021, 36-year-old Shaler lived with his brother, 31-year-old Garrett, and his father David. The relationship between the brothers had been "[t]urbulent for the past few years." On the morning of August 21, Shaler was staring angrily at Garrett and making "terrifying" comments to him like, "I'd rather be feared than loved because then people will listen." Garrett left for work and instead of coming directly home when he finished his shift, he called his father to make sure they would be home at the same time because he was afraid to be alone with Shaler.

David was not there when Garrett arrived home. Garrett went in through the side garage door because his key to the front door was not working. Before entering the house, Garrett started an audio recording on his phone because he was scared. Just then, David pulled into the driveway. Garrett and David went to the front door together, but David's key was also not working. Once inside, they found Shaler drunk.

Shaler was "talking down" and "yelling at [David] aggressively," which bothered Garrett. When Garrett stepped in to defend his father, Shaler got in his face and the two began arguing. The argument was captured on Garrett's audio recording which was still going. Garrett told Shaler he had "every symptom of covert narcissism." Shaler responded, "I will fuck you up. . . . I'll fuck you up. I will. . . . [Y]ou say that to me again and I'll fucking sack you in the fucking face." David told Garrett to "back down" because Shaler was drunk. But Shaler continued his threat and said, "I will be more angry at you when I'm sober. I will fuck you up and you know it. I've got a knife in my pocket too."

At this point, Shaler pulled out "[t]he sheath of the knife." Garrett did not see whether Shaler actually removed a knife from the sheath, but he had

3

one hand on the black handle to the knife and the other on the sheath.[3] As soon as Garrett saw Shaler pull the sheath out of his pocket, he fled out the front door in fear. When he reached his car, Garrett called David who was still inside the house and the two met each other at a nearby park. At the park, Garrett played the audio recording for his father and as he did, he was "trembling" and "physically shaking."

The jury found Shaler guilty of count 1 but was unable to reach a verdict on the misdemeanor in count 2. Count 2 was subsequently dismissed after the court declared a mistrial as to that count.

Sentencing occurred on May 6, 2022. Although Shaler was presumptively ineligible for probation pursuant to section 1203, subdivision (e)(4), because he stood convicted of a felony offense and had suffered two or more prior felony convictions, the probation officer in his report recommended the trial court grant Shaler two years of formal probation after he serve 365 days in jail. The recommendation was based on the factors that Shaler had "no significant criminal history indicating serious or violent acts and ha[d] no recent convictions"; he did not inflict physical injury in the current offense; and his age, education, and family background indicate he has the ability to comply with reasonable terms of probation.

The trial court stated its tentative was to follow the probation officer's recommendation but grant Shaler a probation term of three years "because of the domestic violence." The People agreed. In his statement of mitigation filed before the sentencing hearing, Shaler requested he be placed on three years of informal probation with no additional custodial time. At the hearing,

---

[3] Garrett confirmed he told a sheriff's deputy that night he saw "a black six-inch knife with a curved blade."

counsel for Shaler reiterated his request that the court not "put[ ] him back into custody even for the short amount of time." Shaler also personally addressed the court, again requesting that he be allowed to remain out of custody. The defense neither addressed nor objected to the trial court's indicated three-year probationary term based on "the domestic violence."

The trial court suspended imposition of sentence and placed Shaler on three years of formal probation, following his commitment to the Sheriff for 365 days with credit for a total of 126 days. Shaler was ordered to pay a total of $1,690 in fines and fees.

DISCUSSION

I.

*The Trial Court Properly Ordered A Three-Year Probation Term*

Shaler contends section 1203.1 required the trial court to limit his probationary term to two years because the People had not charged him with "a violation" of section 1203.097 and the *Apprendi* rule required a jury to determine the requisite fact—that Garrett was his brother—before the court could increase the probationary term to three years under section 1203.097. We conclude the trial court properly ordered a three-year probation term.

A. *Sections 1203.1 and 1203.097*

Assembly Bill 1950 was enacted in 2020 and became effective on January 1, 2021—more than 16 months after Shaler's sentencing hearing. (Stats. 2020, ch. 328, § 2; see *People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 893–894 (*Qualkinbush*).) It amended section 1203.1 to limit the maximum probation term that a trial court is authorized to impose for most

5

felony offenses to two years.  (Former § 1203.1, subd. (a)[4]; *Qualkinbush*, at pp. 893–894.)  The Legislature, however, specified certain exceptions from the two-year maximum, including "an offense that includes specific probation lengths within its provisions."  (§ 1203.1, subd. (l)(1); *Qualkinbush*, at pp. 893–894.)  "For these offenses, the court, or judge thereof, in the order granting probation, may suspend the imposing or the execution of the sentence and may direct that the suspension may continue for a period of time not exceeding the maximum possible term of the sentence and under conditions as it shall determine."  (§ 1203.1, subd. (l)(1).)  In other words, if an exception applies, the court may impose a probationary term longer than two years but not more than the maximum possible term of the sentence for that offense.  (See *Qualkinbush*, at p. 894.)

One such exception is found in section 1203.097.  "Section 1203.097 sets forth specific probation lengths and requires a 'minimum period of probation of 36 months' for 'a crime in which the victim is a person defined in [s]ection 6211 of the Family Code.' "  (*Qualkinbush*, 79 Cal.App.5th at pp. 894–895, quoting § 1203.097, subd. (a)(1).)  " 'Section 1203.097 applies to any person placed on probation for a crime *if the underlying facts of the case involve domestic violence*, even if the statute defining the crime does not specifically refer to domestic violence.' "  (*Qualkinbush*, at p. 895, quoting *People v. Cates* (2009) 170 Cal.App.4th 545, 548, italics added.)

---

[4]     The Legislature subsequently amended and then replaced section 1203.1.  (Stats. 2021, ch. 257, §§ 21, 22.)  Relevant here, former section 1203.1, subdivision (m), was redesignated as section 1203.1, subdivision (l).  (See *Qualkinbush*, 79 Cal.App.5th at p. 893, fn. 12.)  We will refer to the current version of the statute.

Relevant here, Family Code section 6211 defines " '[d]omestic violence' " as "abuse perpetrated" against a "person related by consanguinity or affinity within the second degree." (Fam. Code, § 6211, subd. (f).) There is no dispute the victim of Shaler's criminal threat was his brother, a person related by consanguinity within the second degree. (See Prob. Code, § 13, subd. (c); *People v. Mani* (2022) 74 Cal.App.5th 343, 364.)

In *Qualkinbush*, this court "interpret[ed] the phrase, 'an offense that includes specific probation lengths within its provisions' in subdivision (l)(1) of section 1203.1 to refer not only to the statute defining the elements of the crime, but also to any statutory provisions to which the court must look to determine the proper term of probation." (*Qualkinbush*, 79 Cal.App.5th at p. 895; accord *People v. Rodriguez* (2022) 79 Cal.App.5th 637, 644; *People v. Forester* (2022) 78 Cal.App.5th 447, 454 (*Forester*).) Here, Shaler's offense of conviction—making a criminal threat in violation of section 422—does not, itself, include a specific probation length. But "in order to determine the proper term of probation for a defendant convicted of this crime, the trial court must refer to section 1203.097 and, under the circumstances of this case, to Family Code section 6211, because the victim in this case is a person defined in Family Code section 6211." (*Qualkinbush*, at p. 895.) "Thus, the two-year probation limit in section 1203.1, subdivision (a), does *not* apply to [Shaler]," and the trial court was required to impose a minimum three-year period of probation under section 1203.097, subdivision (a)(1). (*Ibid.*, italics added.)

B.  *Section 1203.097 Is Not a Sentencing Enhancement That Must Be Pled and Proven*

Shaler neither disputes that the victim of his offense was his brother nor that criminal threats is a domestic violence offense (see *In re Marriage of Brubaker & Strum* (2021) 73 Cal.App.5th 525, 536 [domestic violence

7

encompasses "threats of physical abuse" against a family member]), and that, under those circumstances, section 1203.097's minimum probation period of three years applied. Instead, he asserts that section 1203.097 is a "domestic violence sentencing enhancement" that could not be statutorily imposed unless the People expressly pled it. (See § 1170.1, subd. (e) ["All enhancements shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact."].) We reject this contention because it misapprehends the term "enhancement."

"By definition, an enhancement is 'an additional term of *imprisonment* added to the base term.'" (*People v. Izaguirre* (2007) 42 Cal.4th 126, 134, quoting Cal. Rules of Court, rule 4.405(5), italics added.) Our high court has explained "enhancements ' "focus on an element of the commission of the crime or the criminal history of the defendant which is not present for all such crimes and perpetrators and which justifies a higher penalty than that prescribed for the offenses themselves." ' " (*People v. Jefferson* (1999) 21 Cal.4th 86, 101.) Thus, "an example [of a sentencing enhancement] would be subdivision (a) of section 12022.7, which provides that any person who personally inflicts great bodily injury in the commission of a felony shall 'be punished by an *additional term* of three years.'" (*Ibid*.) By contrast, section 186.22, subdivision (b)(4), which "provides for a 15–year minimum term of imprisonment when a defendant commits a felony punishable by an indeterminate sentence on behalf of a criminal street gang, is an enhancement provision, not part of the 'current felony conviction.' " (*Jefferson*, at p. 100.) Thus, "[a]lthough section 186.22[, subdivision] (b)(4) focuses on 'an element of the commission of the crime' (the intent to assist a criminal street gang) that justifies particularly severe punishment,

8

its 15–year *minimum* term for crimes punishable, as here, by an indeterminate sentence does not fall within rule [4.405(5)'s] definition of an enhancement, because it is not an 'additional term of *imprisonment*' and it is not added to a 'base term.' " (*Id.* at p. 101, second italics added.)

Section 1203.097 does not add any additional term of imprisonment. It prescribes a minimum period of probation for qualifying circumstances. Thus it is not a sentencing "enhancement" and the pleading requirement under section 1170.1, subdivision (e), does not apply here. Moreover, contrary to Shaler's assertion, section 1203.097 "does not delineate the substantive elements of any crime." (*Forester*, *supra*, 78 Cal.App.5th at p. 455.) There is no such thing as a violation of section 1203.097 and no pleading-and-proof requirement under that statute. (See e.g., *People v. Dorsch* (1992) 3 Cal.App.4th 1346, 1350 [trial court properly denied probation under § 1203, subd. (e)(4), even though People did not plead and prove defendant had prior felony convictions because "[t]he provisions of Penal Code section 1203, subdivision (e)(4), are not the equivalent of an increase in penalty" and there is an "absence of any express statutory pleading and proof requirement within Penal Code section 1203, subdivision (e)"].) "The Legislature has demonstrated in numerous penal statutes that when a pleading and proof requirement is intended, the Legislature knows how to specify the requirement." (*Dorsch*, at p. 1350.) The Legislature did not specify such a requirement with section 1203.097.

Shaler posits an alternative, asserting that if there is no statutory requirement that section 1203.097 be pled and proven, there is a constitutional requirement of notice under the federal and California due process clauses. This contention is forfeited because Shaler failed to raise it below. (See *People v. Nguyen* (2017) 18 Cal.App.5th 260, 272 ["defense

counsel forfeited any constitutional objection based on lack of notice in violation of due process by failing to raise it below"].)  Even if not forfeited, we reject this contention, too, because it rests on the same misapprehension that section 1203.097 is a sentencing enhancement.  (See *People v. Mancebo* (2002) 27 Cal.4th 735, 754 ["Section 1203.06 prescribes grounds for probation ineligibility. . . .  [And] because probation is not punishment [citation], and is further a matter of privilege, not right. . . .  [D]ue process fair notice concerns . . . are simply not implicated in the same way when a trial court exercises its broad discretion to declare a defendant probation-ineligible at sentencing without prior notice."].)

In sum, we reject Shaler's contention the People were required to plead and prove the victim's status under section 1203.097.  Because there is no dispute the victim of Shaler's criminal threat was his brother, the two-year probation limit in section 1203.1, subdivision (a), does not apply to Shaler.  The trial court properly imposed the mandatory three-year term of probation under section 1203.097.  (*Qualkinbush*, *supra*, 79 Cal.App.5th at p. 895.)

C.     *Even If the* Apprendi *Rule Applied to Probation Terms, There Is No Prejudice on This Record*

Shaler contends the *Apprendi* rule requires that the victim's status must be determined by a jury beyond a reasonable doubt before the trial court may impose the higher minimum probation period of three years under section 1203.097, as an exception to section 1203.1.  We need not address this contention because even if the *Apprendi* rule applied, there is no prejudice on this record.

The *Apprendi* rule, founded on the Sixth Amendment right to trial by jury, provides that any fact, other than the fact of a prior conviction, that increases the minimum or maximum penalty for a crime must be either admitted by the defendant, established by the defendant's guilty plea, or

submitted to a jury and proved beyond a reasonable doubt. (*Apprendi*, *supra*, 530 U.S. at p. 490 ["any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury"]; *Alleyne v. United States* (2013) 570 U.S. 99, 103 [extending *Apprendi* to mandatory minimum sentences; holding that because "[m]andatory minimum sentences increase the penalty for a crime[, i]t follows, then, that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury"].) In addition to judicial factfinding that results in increased maximum or minimum prison sentences, the *Apprendi* rule has been applied to judicial factfinding that results in increased criminal fines (*Southern Union Co. v. United States* (2012) 567 U.S. 343, 346); "*new* mandatory minimum prison term" upon the revocation of conditional release (*United States v. Haymond* (2019) 588 U.S. __ [139 S.Ct. 2369, 2380] (*Haymond*)); and death sentences (*Ring v. Arizona* (2002) 536 U.S. 584, 609).

Here, the *only* fact upon which the court based its decision to place Shaler on a three-year term of probation, rather than section 1203.1's two-year term, was the victim's relation to Shaler. Shaler does not dispute Garrett is his brother. Although we appreciate the longer probation term constitutes a longer restriction on Shaler's liberty, we seriously doubt it constitutes a criminal penalty or punishment for the purposes of the *Apprendi* rule. (See *Haymond*, *supra*, 139 S.Ct. at p. 2377 (plur. opn. of Gorsuch, J.) [parole and probation provide defendants with a "period of conditional liberty as an 'act of grace,' " which does "not usually implicate the historic concerns of the Fifth and Sixth Amendments"]; *In re Varnell* (2003) 30 Cal.4th 1132, 1142 [judicial factfinding that resulted in denial of probation did not implicate *Apprendi* because the denial did not increase the penalty for defendant's crime]; Cal. Rules of Court, rule 4.414(c) ["[i]n determining the

11

suitability of the defendant for probation, the court may consider factors in aggravation and mitigation, whether or not the factors have been stipulated to by the defendant or found true beyond a reasonable doubt at trial by a jury or the judge in a court trial"].) We are not aware of any published decision addressing whether the *Apprendi* rule precludes judicial factfinding that increases a term of probation, and the parties have not referred us to any.

But we need not resolve this question. Because on this record, we conclude Shaler was not prejudiced beyond a reasonable doubt. *Apprendi* error is subject to the harmless error analysis under *Chapman v. California* (1967) 386 U.S. 18. (*People v. Davis* (2005) 36 Cal.4th 510, 564.) Thus, "if a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable doubt standard, unquestionably would have found true" the finding in question, "the Sixth Amendment error properly may be found harmless." (*People v. Sandoval* (2007) 41 Cal.4th 825, 839.) That standard is easily met here.

Shaler has not even attempted to argue he was prejudiced by the asserted *Apprendi* error and we can conclude there was no prejudice on that basis alone. (See *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 ["But our duty to examine the entire cause arises when and only when the appellant has fulfilled his duty to tender a proper prejudice argument. Because of the need to consider the particulars of the given case, rather than the type of error, the appellant bears the duty of spelling out in his brief exactly how the error caused a miscarriage of justice."]; *Santina v. General Petroleum Corp.* (1940) 41 Cal.App.2d 74, 77 ["Where any error is relied on for a reversal, it is not sufficient for appellant to point to the error and rest there."].) Even if not forfeited, we can conceive of no argument or evidence

12

that Shaler could have presented to the jury to rebut that Garrett is his brother.  The asserted error was harmless beyond a reasonable doubt.

## II.

*The Trial Court Did Not Abuse Its Discretion in Imposing Fines and Fees*

Before the trial court pronounced sentencing in this case, at the same hearing, Shaler pled guilty to a misdemeanor DUI charge in a separate unrelated case.  The court discussed with counsel the terms and conditions of the probation term it would impose for the DUI before taking the plea.  During that discussion, the trial court on its own commented it would "*Dueñas* the fines because [it] doubt[ed] [Shaler] will be in a position anytime soon to pay those fines."[5]  Shaler never asserted an inability to pay in the DUI case.  However, Shaler's father had written in a victim impact statement, in the criminal threats case, that Shaler was "homeless, jobless, and is supported by [him] and odd jobs he might do once in awhile [*sic*]."

---

[5]    This is a reference to *People v. Dueñas* (2019) 30 Cal.App.5th 1157.  "At the core of the *Dueñas* opinion is its holding that imposition of fines, fees or assessments without a hearing on ability to pay denies due process.  It was that court's view it was the trial court's duty to hold a hearing and thus failure to seek a hearing did not result in forfeiture.  Further, the court found that the burden to prove 'present' ability to pay was on the prosecution.  Other courts, including this court, have disagreed with *Dueñas* on these key principles." (*People v. Keene* (2019) 43 Cal.App.5th 861, 863 (*Keene*); see, e.g., *People v. Cota* (2020) 45 Cal.App.5th 786, 795; *People v. Allen* (2019) 41 Cal.App.5th 312, 326 ["[W]e would adopt the reasoning of the numerous courts that have rejected *Dueñas's* due process analysis."].)  The California Supreme Court is currently considering the viability of *Dueñas* as it pertains to whether a trial court must consider a criminal defendant's ability to pay assessed fines and fines, and if so, which party bears the burden of proof. (*People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844.)

After taking the DUI plea, the trial court proceeded to sentencing on that case. It stated: "Pursuant to the authority granted the court, *People versus Dueñas*, I am staying -- let me impose them, and then I will stay the fine of . . . $2,481 plus $150 probation restitution recovery fund suspended. And I am suspending that -- I'm staying that pursuant to the authority granted to the court on the case that I mentioned *until a further court hearing to determine your ability to pay that*." (Italics added.)

The trial court then pronounced sentencing in this case. It ordered Shaler to pay a total of $1,690 in fines and fees, consisting of an $820 fine plus surcharge and penalty assessment (Pen. Code, § 1465.7, subd. (a)); a $40 court operations assessment (Pen. Code, § 1465.8); a $300 restitution fine[6] (Pen. Code, § 1202.4, subd. (b)); a $300 stayed probation revocation restitution fine (Pen. Code, § 1202.44); a $500 domestic violence fund fee (Pen. Code, § 1203.097)[7]; and a $30 criminal conviction assessment (Gov. Code, § 70373).[8] The court ordered Shaler to pay his financial obligations

[6]    This is the statutory minimum restitution fine that could be imposed. (§ 1202.4, subd. (b)(1).) And a defendant's inability to pay "shall *not* be considered" when imposing the statutory minimum. (§ 1202.4, subd. (c), italics added; *ibid.* ["A defendant's inability to pay shall not be considered a compelling and extraordinary reason not to impose a restitution fine. Inability to pay may be considered only in increasing the amount of the restitution fine in excess of the minimum fine pursuant to paragraph (1) of subdivision (b)."]

[7]    Shaler separately contends the $500 domestic violence fee must be reversed because section 1203.097 is a sentencing enhancement that must be pled and proven beyond a reasonable doubt. We have already rejected this argument.

[8]    There appears to be a clerical error on the order granting formal probation as to the "TOTAL DUE" amount. Each specific amount imposed by

14

through probation at the monthly rate of $35, starting 60 days after his release from serving 365 days in custody. Shaler did not object to these fines and fees, assert he had an inability to pay them, nor request the trial court make a determination of his inability to pay.

Shaler asserts the trial court abused its discretion in imposing the $1,690 of financial obligations in this case because it had already determined Shaler did not have the ability to pay in the DUI case. We disagree. First, the record does not establish the trial court made a determination or factual finding that Shaler did not have the ability to pay in the DUI case. It questioned whether he had the ability to pay and stayed the financial obligations in the DUI case *until a further court hearing to determine [his] ability to pay.*" (Italics added.) But even if the trial court determined Shaler did not have the ability to pay the total of $2,631 in the DUI case, Shaler does not explain why that compels the conclusion he did not have the ability to pay the lesser amount of $1,690, at a monthly rate of $35, in this case.

Relying on *Dueñas*, Shaler asserts the trial court violated his right to due process under the Fourteenth Amendment to the federal Constitution by imposing these financial obligations without holding an ability to pay hearing. *Dueñas* was decided more than three years before Shaler's sentencing hearing. We agree with the People that Shaler forfeited this

---

the trial court at the sentencing hearing and listed in the order adds up to $1,690. However, the order states the "TOTAL DUE" is $1,190. Where an order entered fails to reflect the order pronounced by the court, the error is clerical, and the record can be corrected at any time to make it reflect the true facts. (*In re Candelario* (1970) 3 Cal.3d 702, 705 ["It is not open to question that a court has the inherent power to correct clerical errors in its records so as to make these records reflect the true facts."].) We shall direct the trial court to correct the order granting probation to reflect the total amount due of $1,690.

claim by failing to object to the financial obligations when they were imposed. (See *People v. Flowers* (2022) 81 Cal.App.5th 680, 687 (*Flowers*), review granted Oct. 12, 2022, S276237 [appellant forfeited his challenge to the trial court's order imposing a court operations assessment of $30, a court facilities assessment of $40, and a $5,000 restitution fine without determining his ability to pay when he did not object at his sentencing hearing held over two years after *Dueñas* was decided]; *People v. Greeley* (2021) 70 Cal.App.5th 609, 624 ["At the time of defendant's sentencing hearing, *Dueñas* had already been decided, and there is no reason why defendant could not have requested an ability-to-pay hearing based on *Dueñas*. . . . Defendant's apparent decision to not raise the issue at the . . . sentencing hearing forfeits her [ability-to-pay] arguments on appeal."].)

Shaler asserts if his constitutional challenges are deemed forfeited, then his trial counsel was ineffective for failing to object to the imposition of the challenged financial obligations. To establish that his trial counsel was ineffective, Shaler bears the burden of showing that counsel's representation was defective and that he was prejudiced as a result. (*Strickland v. Washington* (1984) 466 U.S. 668, 690; see *Keene, supra*, 43 Cal.App.5th at pp. 864–865 [finding defendant failed to establish on appeal that his trial counsel was ineffective for failing to object to fines, fees, and assessments].)

Here, "the record is silent as to counsel's reasons, if any, for failing to object. If ' " 'the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation,' the claim on appeal must be rejected." ' " (*Flowers, supra*, 81 Cal.App.5th at p. 687; accord *Keene, supra,* 43 Cal.App.5th at p. 864 ["We have no idea why counsel did not raise the ability to pay issue."].) "In

16

these circumstances, the claim of ineffective assistance is more appropriately decided in a habeas corpus proceeding." (*Flowers,* at p. 687.)

## DISPOSITION

The judgment is affirmed.  The trial court is ordered to correct the order granting formal probation to reflect the actual total amount due of $1,690 imposed by the court.

DO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


O'ROURKE, J.

17